**Corinne KENNEDY, Appellant
(Defendant below),**

**v.**

**James C. KENNEDY, Appellee
(Plaintiff below).**

**No. 3737.**

Supreme Court of Wyoming.

July 7, 1969.

Rehearing Denied Aug. 13, 1969.

Ernest J. Goppert and Ernest J. Goppert, Jr., of Goppert & Fitzstephens, Cody, for appellant.

Joseph E. Darrah, Hunter Patrick, Powell, for appellee.

Before GRAY, C. J., and McINTYRE, PARKER, and McEWAN, JJ.

Mr. Justice PARKER delivered the opinion of the court.

James C. Kennedy brought action for divorce against Corinne Kennedy, alleging a marriage of twenty years, two children of the marriage, Sandra, nineteen, Terry, thirteen; charging intolerable indignities; and requesting an equitable division of the property belonging to the parties. Defendant answered, denying generally, asserting some property additional to that listed by the plaintiff, the ownership by herself and the children of the family residence, and counterclaimed for divorce on intolerable indignities, praying custody of the children, support for them, alimony, attorney fees and costs, the home as her separate property, and the equitable division of the parties' belongings.

At the beginning of the trial, plaintiff withdrew his complaint and the case proceeded on defendant's counterclaim. The court, following the hearing, granted defendant the divorce and custody of the children, with provision that plaintiff pay her seventy-five dollars per month for the support of each child during minority; found that the property of the parties after deducting a $23,000 debt was valued at $92,475; decreed that each of the parties was entitled to one-half of the net value or $46,237, that defendant retain her right to the possession of the home but be charged $10,500 for plaintiff's equity in the increased value thereof since it had become the property of defendant and the children, together with a Studebaker car valued at $200, Ivest stock valued at $2,600, a savings account in the bank amounting to $1,100, the furniture in the residence valued at $2,500, and that plaintiff secure by first lien against the laundromat and car wash to the defendant the sum of $29,338 with interest at 5 percent per annum to be paid to her at $200 per month on a direct monthly reduction plan, interest to be deducted from each monthly payment and the balance only to be applied to retirement of principal, plaintiff to have the right at his option to pay all or any part of the unpaid balance at any time. The decree also provided that plaintiff should pay the son's insurance until he became twenty-one, that defendant should pay for the daughter's insurance until she became twenty-one, and further that plaintiff pay $500 attorney fees to defendant together with costs and held that because defendant had received $2,170 she be allowed nothing additional for support money during the pendency of the divorce action; it awarded to plaintiff as his separate property the following: mutual

funds in his name, $46,150; Standard Oil trust program, $9,625; retirement fund $3,500; Coffee Cup Cafe, $2,700; trailer, $800; coin collection, $400; radio equipment, $500; Chrysler car, $2,800; cash on hand, $100; laundromat, $27,500; car wash, $4,500; and provided that he assume and pay the $23,000 indebtedness.

Defendant filed a timely motion for new trial, alleging numerous errors in the decree and a motion for support money, court costs, and attorney fees pending final determination. The court conducted a hearing on the motions, at which time a stipulation was entered between the parties and each adduced certain evidence, following which the court overruled the motion for new trial but amended the divorce decree in certain respects, viz., (a) the $29,338 theretofore awarded to defendant was ordered to be paid in a lump sum by August 1, 1968, or on plaintiff's election not to do so, paid at the rate of $250 per month, payments to begin as of March 1, 1968; (b) defendant was to have as additional security for the unpaid balance a second lien on all mutual funds in plaintiff's name; and (c) plaintiff was directed to reimburse defendant for sums paid by her for the tuition of Sandra at Northwest Community College in the school year 1967–68, not to exceed $224 and be reimbursed for her books not to exceed $150, and commencing with the 1968–69 school year to pay for the children's tuition while attending Northwest Community College, plus books not to exceed $150 per year, provided that if they attended some other college he pay their expense in amount not to exceed $150 per month while each is enrolled and in attendance at the college, during such time he to be relieved from the seventy-five dollars per month child-support payment, the provision for college expenses not to exceed four school years each. As to the motion for support money, court costs, and attorney fees pending final determination, the court ordered, inter alia, that in addition to the $500 attorney fee already ordered to be paid by plaintiff that he should pay to counsel for defendant $750 as fees for the appeal and that as to the moneys paid defendant monthly for her support from March 1968 until the final determination of the action, it should be determined by this court whether or not such moneys be deducted from the $29,338 owing defendant.

Defendant has appealed from the court decree as amended on three charges of error:

1. The family residence and the Farm Light and Power funds being the property of defendant and the minor children in joint tenancy were erroneously included in the property settlement.

2. The support money allowances for defendant and children pendente lite were inadequate.

3. The division of the property between the parties by the court was not fair, just, nor equitable.

No complaint is registered by the appellant as to the extent and valuation of the property as recited by the court and aside from the argument that the residence of the parties and the Farm Light and Power funds were jointly held by the wife and children and should not have been included in the settlement, no disagreement is voiced against the court's general philosophy in the division of the property "that each party is entitled to receive one-half of said net value." These circumstances to an extent remove from consideration in the appeal the question of discretion to be exercised by the trial court.

### The Joint Tenancy Property

The evidence presented at the trial showed the family residence, which at the time it was built in 1954 was worth some $15,000 and at the time of the trial $25,500, had been deeded by defendant's father to her and the children as joint tenants, and testimony was offered although rejected by the court that the Farm Light and Power funds were similarly held. Defendant's challenging the inclusion of the joint tenancy property in the settlement seems to stem principally from the impropriety of a court in a divorce action making disposi-

tion of property which would affect the title of strangers to the action. She alludes to § 20–63, W.S.1957, which provides, "In granting a divorce, the court shall also make such disposition of the property of the parties, as shall appear just and equitable, having regard to the respective merits of the parties and to the condition in which they will be left by such divorce, and to the party through whom the property was acquired, and to the burdens imposed upon it, for the benefit of the wife and children * * *," and concedes that the court has reasonable discretion but insists that this must be limited to the property of the parties. She says that since the children were not before the court there was no jurisdiction to grant the plaintiff any rights in the joint tenancy property. Several cases are discussed by the litigants as substantiating their respective positions for and against this tenet but none deal with similar circumstances or a question closely resembling the one before us, i. e., does a court in a divorce action have authority to allocate to one of the parties an interest which is held by the other party in joint tenancy with a third person. In Lovejoy v. Lovejoy, 36 Wyo. 379, 256 P. 76, 79, on which plaintiff relies for the court's authority to dispose of the property, the wife questioned the right of the court to award her separate property to the husband, and the court observed, "The defendant says the statute [predecessor of § 20–63], in authorizing a disposition of the 'property of the parties,' refers only to property held jointly or in common, and does not authorize the disposition of the wife's separate property. We are of opinion that the interpretation contended for cannot be given the statute, but that the court is authorized to dispose of separate as well as joint property." This statement is of little assistance in the present controversy for two reasons: (1) The reference to "property held jointly" and to "joint property" is not sufficiently delineated to be meaningful as it might pertain to that held by one of the parties and a third person; (2) Since the property there divided was that of the wife, any reference to jointly held property is at best dicta. We would hesitate to resolve the matter on so slight authority, but as appellant has the burden of substantiating the point, we decline approval of her position. However, there is another facet concerning the disposition of the property held in joint tenancy by Mrs. Kennedy and the children which merits discussion.

The court in a letter to counsel conveying its desire concerning the decree to be drafted after noting that the cost of the residence was $15,000 and then worth $25,500, said, "The Court has charged the defendant with $10,500.00, or the increase in value thereof, as it is believed the plaintiff has contributed to the increase and is entitled to share therein." In the findings the court stated, "that said residence so used by the parties hereto was constructed at a cost of $15,000.00 and that it is now worth $25,500.00; and that in the Property Settlement between the parties hereto the Court charges the Defendant with $10,-500.00 of the present net worth of said property for Plaintiff's contribution to the increase in the value thereof." (Emphasis supplied.) The decretal portion read, "IT IS FURTHER HEREBY ORDERED, ADJUDGED AND DECREED * * * that the Defendant Corinne Kennedy shall have and retain her right of possession of the residence owned jointly by herself and the minor children of the parties hereto but she shall be charged with $10,500.00 for Plaintiff's equity in the increased value thereof since it became the property of the Defendant and the two children of the parties hereto." It is thus clear that the charge was made against defendant because of plaintiff's contribution, and we look to the record for any evidence which would support the findings and judgment in that aspect.

Plaintiff testified at some length about the cost of various items of furniture for which he paid but that testimony is here unimportant since it was stipulated that "The furniture in the house is agreed to be worth $2,500.00" and the court charged

defendant that amount in the settlement. Aside from the furniture, plaintiff did not claim that he paid any other amounts on the house except for $2,000. Although at one point he said that this was for carpeting, cabinet work, and furniture, elsewhere he testified that the carpeting cost approximately two thousand dollars. This amount he explained had been advanced by his wife's father but was later repaid by him. Although it might be that the carpeting has depreciated and been so worn during the occupancy as to now be valueless, we cannot so assume, and under the evidence presented, this was a valid contribution. Mrs. Kennedy testified that her father, a carpenter or constructor, had owned certain land outside of Powell and built two homes thereon, one for her parents' residence and the other given to her and the two children jointly by her father and mother; that her father paid for the labor and materials that went into the house, doing part of the work himself and hiring carpenters. She said that her husband did not spend any money on the construction of the house but did contribute labor to both their home and her parents' home. Asked what percentage of labor he would have contributed, she said she had no idea, that they put in all the extra time they had. Nothing was said by any witness concerning the value of his work. Accordingly, the only substantiation of contribution made by plaintiff to the residence of the parties is the $2,000 for the carpeting,[1] and the portion of the judgment stating that defendant be "charged with $10,500.00 for Plaintiff's equity in the increased value" of the property is without support except as to the $2,000, which amount should be substituted for the $10,500 in the computations regarding the property settlement.

### Support and Allowances Pendente Lite

■ The court in its judgment provided that since defendant had received $2,170—

$1,225 from cashing plaintiff's salary checks, $45 payment of her gasoline bill, and $100 for other charges paid by him as support money, together with $800 Farm Light and Power stock dividends—that she should receive nothing additional for the period from July 20, 1967, through February 29, 1968. Defendant's disagreement regarding the $2,170 is that she claims the Farm Light and Power funds amounted to $640.35 instead of $800. However, since her counsel at one time agreed in open court that the amount was $800, thereafter indicated that the correct amount would be shown by evidence, but failed to present same, defendant is scarcely in a position to challenge the amount set by the court. Although plaintiff insists that in addition to the $2,170 mentioned defendant received $150 per month child support during the period of the pending litigation, this assertion is wholly unsupported by the record which shows such support commencing March 1, 1968.

■ The amount allowed by the court for the seven and one-third months averages something less than $300 per month, substantially under the monthly amount payable after the decree was issued. However, this was a matter within the court's discretion, which we do not consider to have been abused.

### The Fairness, Justness, and Equity of the Property Settlement

■ As we have frequently indicated in our discussions of property settlements in divorce cases, the problems encountered are complex, and under the latitude of the statutes promulgated by the legislative department of the State, the question of fair and equitable property division is largely within the discretion of the trial court. In fact, we have said that a trial court's judgment cannot be disturbed except on clear grounds and have pointed out that we have

---

1. Certain pages of the transcript were by agreement of counsel omitted from the record on appeal, and it may of course be that some testimony relating to plaintiff's contribution was contained therein. However, that is not a matter upon which this court may speculate.

seldom interfered with such a determination except in extreme cases.

One of the bases of defendant's complaint is closely related to an aspect previously resolved herein, namely, the $10,500 with which she is charged for the increase of value of the family residence from the time of receipt of her title until the suit. Nothing more need be said on this subject.

A further ground of challenge is that the husband was given practically all the income-producing property while the wife was relegated to a fixed income at the rate of 5 percent, an interest rate wholly incommensurate with present-day finances. After the preliminary challenge in this respect, the court raised the $200 monthly payment to $250 but rejected evidence as to the higher current rates of interest and left the interest on the balance due to defendant at 5 percent as in the original decree. An appellate court cannot in the review of divorce settlements substitute its own concept as to fairness, justness, and equity, nor nullify the trial court's determination except where there is a gross abuse of discretion, which the record in this case fails to disclose.

Although the finder-of-fact might have been warranted in physically dividing the property rather than awarding the major part to plaintiff and requiring defendant to take installment payments for most of her share, the impracticability of actual division of the coin-operated laundry and car wash as well as the obligation against the stocks and securities were factors which might well have had a bearing upon the judgment, and all things considered, we deem the settlement just and reasonable except for the item concerning the increase in value of the property jointly held by defendant and the children.

However, we have been disturbed by the lack of sufficient provision for securing defendant in the payment of the balance decreed to her. Undoubtedly this matter must have occurred to the trial court since the order amending the decree stated that she "have as additional security over and above that heretofore set forth in the * * * decree * * * a second lien upon all mutual funds in the name of plaintiff." The decree should be amended to additionally provide that the obligation of plaintiff to defendant be a lien against his Standard Oil holdings. So far as the record shows, notice to others concerning the obligations under the decree would seem to be inadequate. The trial court should, if not already done, arrange (1) that this decree be filed in the office of the clerk of the county in which the coin-operated machines are located in order that the same may be properly indexed and stand as a lien against said property; (2) provide appropriate arrangements that the Standard Oil holdings and mutual funds transferred to plaintiff as his separate property under the decree be not further alienated, encumbered, or substituted without permission of the court until the plaintiff shall have paid to defendant the entire balance on the property distribution.

### Miscellaneous

Some argument has been presented by counsel as to costs and additional attorney fees to be allowed on appeal but it would appear that the $1,250 attorney fee heretofore allowed by the trial court took into consideration the appeal, was generous, and should control.

The trial court left open the question of the time at which the $250 to be paid monthly to defendant by plaintiff would begin to reduce the lump sum balance due from plaintiff. This court determines that date to be the time at which the original decree was entered, namely, March 1, 1968.

Affirmed in part; reversed in part; and remanded with instructions.