**Gregory Alan FRANCE, Appellant (Plaintiff),**

v.

**Kathie Sue FRANCE, Appellee (Defendant).**

No. 94–225.

Supreme Court of Wyoming.

Sept. 12, 1995.

Frank J. Jones, Wheatland, for appellant.

David D. Uchner, Cheyenne, and James N. Wolfe, Cheyenne, for appellee.

Before GOLDEN, C.J., and THOMAS, MACY, TAYLOR and LEHMAN, JJ.

THOMAS, Justice.

The only issue in this case arises from a disparate division of the property of the parties by the district court in granting a divorce. Gregory Alan France, the husband (husband), asserts the division of the property was so unequal an abuse of discretion by the district court is manifest from that fact alone. In order to magnify the disparate division, the husband also disputes the valuation assigned by the trial court to stock in a ranching corporation. The trial court set over to Kathie Sue France, the wife (wife), as her separate property the stock in the ranching corporation and traceable cash she had inherited from her parents, a diamond ring she had inherited from her grandmother, other property she had inherited, and property she brought to the marriage. We hold, when all of the statutory factors which the trial court is entitled to consider in making a property division in a divorce are taken into account, there was no abuse of discretion by the district court. We affirm the Findings of Fact, Conclusions of Law and Decree of Divorce entered in the district court.

In the Brief of Appellant, filed in behalf of the husband, the issue is stated in this way:

Did the trial court abuse its discretion in distributing the marital estate by awarding 93.72% ($1,380,630.00) of the marital estate to the wife and 6.28% ($92,456.00) to the husband?

In the wife's Brief of Appellee, the following issues appear:

I. Whether or not the trial court accurately considered the respective merits of the parties and the condition in which they and their daughter of tender age would be left following the divorce.

II. Whether or not a proper determination was made concerning through whom the property was acquired and the burden imposed upon the property for the benefit of either party and the child.

By the time the case went to trial, the only matter in dispute between husband and wife was the division of their property. Following the trial, the district court entered detailed Findings of Fact, Conclusions of Law, and Decree of Divorce. The Findings of Fact pertinent to this appeal are:

8. The parties own 10,985.3 shares of stock in Petsch and Rollins, Inc. Petsch and Rollins, Inc. is a closely-held ranching corporation which was established and operated by the Defendant's parents. The stock ownership is divided between Plaintiff and Defendant pursuant to an estate tax minimization plan.

9. All but 790 shares of the Petsch and Rollins, Inc. stock was inherited by Defendant from her parents in 1991. The balance of the stock was gifted to Defendant by her parents.

10. After inheriting the stock, Defendant gifted a portion of it to Plaintiff in 1992 pursuant to the parties' estate plan.

\* \* \* \* \* \*

14. The parties hold a promissory note from Petsch and Rollins, Inc. in the principal amount of $130,000.00. The cash loaned pursuant to the note was inherited by Defendant from her parents' estate in 1991.

15. The Defendant holds an Individual Retirement Account, valued at $19,550.00, which consists entirely of funds inherited from the Defendant's mother in 1991.

The trial court, in its Conclusions of Law, stated:

28. The division of property need not be equal to be equitable and the Court should view many factors in arriving at its

decision relative to the division of property including, but not limited to:

    a.  Length of marriage;

    b.  The length of time the parties have owned the respective property and whether they have contributed to its increase in value if it was at one time the separate property of the other;

    c.  The merits of the parties' position;

    d.  The party through whom the property was acquired;

    e.  Also, the condition in which either of the parties or the children may be left after the distribution and the need of the property for the benefit of one or the other parties or their children. W.S. § 20–2–114 (1977), *Bricker v. Bricker,* [877 P.2d 747] Slip Opinion 93–200 July 13, 1994.

29.  Based upon the appropriate factors for consideration in property division, as set forth in finding no. 28, above, the property given to or inherited by the Defendant from her parents should be set over to the Defendant. Such property includes all stock in Petsch and Rollins, Inc., the promissory note from Petsch and Rollins, Inc., the IRA, the coin collections and the silver dollars. The respective merits of the parties, the source and time of acquisition of such property, and the fact that the parties have not contributed to any increase in value of such property support this conclusion.

30.  The Defendant should receive the ring she inherited from her grandmother.

31.  The other property of the parties should be divided between them as indicated on attached Exhibit "A".

The Findings of Facts and Conclusions of Law demonstrate that, aside from the stock in the ranching corporation, the cash traceable to the wife's inheritance from her parents, and other property inherited by the wife, the trial court divided the property by awarding property worth approximately $95,256 to the husband and property worth approximately $82,827 to the wife.

 After the decree was entered by the trial court, the husband filed a Motion to Make Additional Findings and Conclusions of Law and a Motion for New Trial on Issue of Property Distribution. The trial court reaffirmed its earlier findings with some clarification, and the motion for new trial was denied. The husband then appealed the case to this court.

In resolving the question of whether the trial court committed an abuse of discretion with respect to the division of property, we begin with the pertinent statute, WYO.STAT. § 20–2–114 (1994), which provides:

    In granting a divorce, the court shall make such disposition of the property of the parties as appears just and equitable, having regard for the respective merits of the parties and the condition in which they will be left by the divorce, the party through whom the property was acquired and the burdens imposed upon the property for the benefit of either party and children. * * *.

In *Lund v. Lund,* 849 P.2d 731, 738–39 (1993), we summarized prior cases relating to the division of marital property, saying:

We have held, on numerous occasions, that the division of marital property is within the discretion of the trial court and, absent a manifest abuse of that discretion, we do not disturb that result. *Neuman v. Neuman,* 842 P.2d 575 (Wyo.1992); *Mair v. Mair,* 823 P.2d 538 (Wyo.1992) (citing *Williams v. Williams,* 817 P.2d 884 (Wyo. 1991); and *Blanchard v. Blanchard,* 770 P.2d 227 (Wyo.1989)). The trial court determines the appropriate disposition of the marital property and alimony under the statute as an exercise of its sound discretion. *Kennedy v. Kennedy,* 761 P.2d 995 (Wyo.1988) (citing *Broadhead v. Broadhead,* 737 P.2d 731 (Wyo.1987)). Our rule is that an abuse of discretion occurs when the disposition shocks the conscience of the court and appears so unfair and inequitable that reasonable persons could not abide it. *Neuman; Grosskopf v. Grosskopf,* 677 P.2d 814 (Wyo.1984) (citing *Paul v. Paul,* 616 P.2d 707 (Wyo.1980), and *Kane v. Kane,* 577 P.2d 172 (Wyo.1978)). In applying these standards, we review the evidence on appeal in the favor of the successful party below, ignoring the evidence of the unsuccessful party, and granting the

successful party every reasonable inference that can be drawn from the record. *Kennedy* (citing *Grosskopf*).

The property which is subject to division under our statute consists of property which is the product of the marital union and was acquired during the course of the marriage by the joint efforts of the parties. The statute requires such property to be disposed of in a just and equitable manner between the parties in the exercise of judicial discretion. We have held a just and equitable division is as likely as not to be unequal. *Blanchard v. Blanchard,* 770 P.2d 227 (Wyo.1989). WYO. STAT. § 20-2-114 includes as a factor, "the party through whom the property was acquired * * *." In *Warren v. Warren,* 361 P.2d 525 (Wyo.1961), we held property, which was inherited by or given to that party, can properly be awarded to the party by whom it was inherited or given. In *Paul v. Paul,* 616 P.2d 707 (Wyo.1980), we held it is not an abuse of discretion to award to a party the property he brought to the marriage.

We examine the factual situation before the court in this case in light of this statute and its previous interpretation. The Frances' marriage endured for twenty years. They were married on December 29, 1973, and the husband filed for divorce on February 4, 1994, seeking equitable division of their property. The husband finished college at the end of the fall term in 1975 and took a job in Laramie until the wife graduated in the spring of 1976. They then moved to the Petsch and Rollins ranch located near Lingle. The ranch was owned by a closely-held corporation, the stock of which was owned by the wife's parents and her grandfather. The husband worked full-time for the corporation for seventeen and one-half years as a ranch hand. The wife's father made the management decisions for the ranch during that period of time, and the husband was paid a salary which grew from $800 per month to $2,100 per month. This was above the average salary for ranch hands. In addition, he had the benefit of a house, utilities, and gasoline. The wife worked on the ranch part-time during busy seasons and, after a year and a half, she began working, also part-time, at Eastern Wyoming Community College. That position developed into a full-time position and was a source of some of the marital discord.

Although the wife had some property, neither the husband nor the wife had any significant assets at the time they were married. Over the twenty years, they did acquire some marital assets. With respect to the property in dispute here, the wife's parents both died in June of 1990, within hours of each other. The record demonstrates the wife inherited somewhere between $187,000 and $211,000 in cash from them. She also received their shares of the stock in the ranching corporation. She then gave ten shares of stock to her husband so that he might be named as a member of the board of directors and president of the company, as required by the bylaws of the corporation. At that point in time, they agreed he should manage the ranch. The next year, the wife gave sufficient stock to her husband to constitute him a forty-five percent shareholder. This was done to effectuate an estate plan designed to minimize inheritance taxes and provide the maximum estate for their daughter who is learning disabled.

In 1989, in 1991, and in 1992, the corporation, on three occasions, redeemed stock from the wife's grandmother and two aunts who had become minority shareholders by virtue of the shares inherited from the wife's grandfather. During the probate of the wife's parents' estate, the corporation borrowed cash from their estates to finance one redemption. Subsequently, the corporation borrowed $130,000 from the wife and the husband to complete the redemption of the stock of the minority shareholders.

In 1994, when the husband filed for divorce, the wife answered and filed a counterclaim seeking custody of the daughter, dismissal of the divorce, a judicial separation, and an equitable division of the property of the parties. She also requested child support and alimony. Subsequently, her pleading and counterclaim were amended so that she sought an absolute divorce along with other customary relief.

We are satisfied this record justifies the property division ordered by the district court. In the Findings of Fact, the trial

judge traced the stock in the ranching corporation and the cash back to the source, the wife's parents. The evidence is not disputed with respect to the corporate stock and establishes that the wife received 790 of a total of 10,985.3 shares by gifts from her parents. The remaining shares were inherited by the wife from her parents. The $130,000 which was borrowed by the corporation came from cash inherited by the wife from her parents. The wife owned an individual retirement account which also was traced to funds inherited from her mother. It is equally clear a substantial portion of the furniture owned by the parties was inherited by the wife from her parents. Based on all the evidence, the trial court concluded the stock in the ranching corporation, the funds represented by the IRA, the funds represented by the promissory note, some coin collections and certain silver dollars, and a ring inherited by the wife from her grandmother should be set over to the wife. The court based its conclusion on the factors articulated in Wyo.Stat. § 20–2–114, particularly the respective merits of the parties, the source of acquisition of the property, and the fact the parties did not contribute to any increase in the value of the property.

The husband testified he did not earn, and was not entitled to, any stock in the ranching corporation as a result of his employment. He explained he had worked as a ranch hand up to the time of the death of the wife's parents and made no decisions with respect to management of the ranch prior to the death of the wife's father. The value of the stock decreased rather than increased after he became the manager. It was profitable up until he decided to change from a yearling operation to a cow-calf ranch operation. This change increased the indebtedness of the corporation, and it sustained sizable operating losses because of the investment in livestock and equipment after the conversion. In *Bricker v. Bricker*, 877 P.2d 747, 751 (Wyo.1994), we upheld a ruling by the trial court that the separate property of the wife be set over to her, where it was purchased before she met her husband, and the record disclosed the husband "made absolutely no contribution, by way of capital or effort, to the appreciation of that property." To the same effect is *Karns v. Karns*, 511 P.2d 955 (Wyo.1973).

In this case, the husband does contend he is the owner of forty-five percent of the stock in the ranching corporation because of the shares given to him by his wife. The testimony of both the husband and wife discloses the purpose of the first gift of stock was to enable the husband to be named a member of the board of directors so he could serve as president of the company. They also testified the reason for the major gift was to effectuate an estate plan designed to minimize inheritance taxes in order to provide the maximum estate for the benefit to their daughter. The testimony of the wife with respect to the gifts of stock to her husband was:

Q. When it came time to do this estate planning to—Well, when that came up, what is your recollection of how that all transpired?

A. My recollection is that as we were settling the estate—There was not one estate. There were two estates. I would like to clarify that for the Court.

As we were going through this process, we realized that because there were two estates, we weren't able to avoid an estate tax problem, and my recollection to me is with Greg, you know, Kathie, when these estates are settled, we have got a real estate tax problem. When something happens to you, Adeena and I are going to go lose the ranch. There is no way we will be able to hold on to it, so we need to do some estate planning. The estate was settled in March of 1991, so at some point after that we approached Larry Weaver. That's my recollection.

Q. And it culminated in November of 1992 when you sat down in his office and transferred the stock; is that correct?

A. Yeah, that's correct.

Q. When you met with your husband and Mr. Weaver in Mr. Weaver's office, do you recall how much stock it was that Mr. France wanted you to gift to him?

A. He wanted 50 percent.

Q. Was there some discussion about that?

A. Yes. I was uncomfortable with that. I knew that my dad was probably rolling over in his grave at the time, and I don't know, I just had this gut feeling that I needed to maintain a majority stock owner status, and so we discussed that. Greg kind of sat there during the discussions between Larry and I, and Larry and I came up with the 45/55 percent split.

Q. What was your intention when you were making this? What did you want to happen to the ranch? What were your thoughts?

A. My thought was that I wanted this ranch to continue. I didn't want it to be sold because of inheritance tax. I was very concerned about our daughter Adeena and that she may need help her entire adult life financially, and I wanted to make sure that at least that asset was there to support her through her life.

Q. Did you discuss that? Did you and Mr. France jointly discuss that?

A. Yes, we did. In fact, we had a discussion on the phone within the last, I believe, two to three weeks, and I said to him then, you know, we don't know if Adeena is going to be able to support herself as an adult; and he said yes, I know; and I said we need to make sure that she is provided for, and he agreed that we did.

Q. When you were making this gift of stock to him that, in essence, divided the ownership of this corporation almost in two, so that it made it into two estates, the same as with your mother and father; is that correct?

A. That is correct.

It is apparent that the purpose of the gift of stock to the husband was to effectuate the estate plan on the assumption they still would be married when the first one died. In fact, at the time of that major gift, the attorney asked the husband if they had a solid marriage, and he replied, "Rock solid."

We are satisfied, given this record demonstrating the stock and cash came to the parties by virtue of the wife's inheritance from her parents and the purpose for which the gift of stock was made to the husband, that the trial court did not abuse its discretion. The distribution of the property made by the court was fair, just, and manifested an exercise of discretion that is unassailable. The court carefully made a record as to its application of WYO.STAT. § 20–2–114 and its consideration of all of its factors, in accordance with our prior cases.

With respect to the asserted issue about the valuation of the stock in the ranching corporation, our affirmance of the decision of the trial court to set that stock over to the wife makes any debate with respect to its value moot. Consequently, we do not address that issue.

The Findings of Fact, Conclusions of Law, and Decree of Divorce entered by the trial court are affirmed.