Thomas Lee CARLTON, Appellant
(Plaintiff),

v.

Debra Lynn CARLTON, Appellee
(Defendant).

No. 99–41.

Supreme Court of Wyoming.

March 1, 2000.

Representing Appellant: Jeffrey C. Gosman, Casper, Wyoming.

Representing Appellee: Colin M. Simpson of Simpson, Kepler & Edwards, LC, Cody, Wyoming.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN, and HILL, JJ.

GOLDEN, Justice.

Appellant Thomas Lee Carlton appeals from a decree of divorce raising issues of child support, alimony, and division of the marital property.

We affirm.

## ISSUES

Appellant raises these issues on appeal:

1. Was the Court's division of the marital estate punitive in nature?

2. Is there a reasonable basis for the award of child support and alimony?

3. Did the court err as a matter of law in its finding that Appellant was voluntarily unemployed or voluntarily under employed?

4. Did the court commit *plain error* in the volume of character evidence admitted in this trial?

Appellee Debra Lynn Carlton restates the issues as:

1. Was the trial court's division of the marital estate an abuse of discretion?

2. Was the award of child support and alimony an abuse of discretion?

3. Did the trial court err as a matter of law in finding Appellant was voluntarily unemployed or underemployed?

4. Did the trial court commit *plain error* in the admission of evidence?

## FACTS

The Carltons were married on December 30, 1978, and had one son together who was thirteen years old at the time of trial. Mr. Carlton adopted Mrs. Carlton's son from a previous relationship; however, he had reached the age of majority at the time of trial. During the marriage, Mr. Carlton worked as a directional driller in the oil industry, a position which routinely caused him to work all over the world. Mrs. Carlton was a homemaker. In March of 1995, the couple purchased Blackwater Lodge, a scenic dude ranch near Yellowstone National Park outside of Cody, Wyoming. Blackwater Lodge is on a federal Forest Service lease. The couple formed a corporation called Blackwater Lodge, Inc., and the assets of the lodge were transferred to the corporation. Both of the parties operated Blackwater Lodge and employed the older son.

Since the parties' purchase of the dude ranch, the corporation has had financial difficulties, and Mr. Carlton continued to work as a directional driller. In January of 1997, he returned from working in Venezuela to learn Mrs. Carlton intended to divorce him. He filed for divorce that month; she answered and filed a counterclaim, and the matter proceeded to trial on March 31, 1998. Trial continued through six days in April and two days in July of 1998 for a total of nine days. The trial court issued a twenty-three page decision letter on November 2, 1998, generally finding in favor of Mrs. Carlton on her counterclaim. She was found to be the ag-grieved party and granted a divorce, given primary custody of their minor son, and awarded Blackwater Lodge on the condition she hold Mr. Carlton harmless for debt associated with it. Other personal property and debt were divided between the parties. Mr. Carlton was granted restricted visitation with his son subject to approval by two counselors; found to be voluntarily unemployed; required to pay child support retroactive to January of 1997; and required to pay alimony.

## DISCUSSION

Although Mr. Carlton identifies four issues for appeal, his argument is organized around two basic contentions: that the overall impact of the decree is punitive in nature, violating the abuse of discretion standard, and that the court's finding that he is voluntarily unemployed is erroneous as a matter of law and does not support his child support and alimony obligation. He does not contest custody or visitation.

### Standard of Review

Division of marital property is governed by Wyo. Stat. Ann. § 20-2-114 (LEXIS 1999), which provides in pertinent part:

In granting a divorce, the court shall make such disposition of the property of the parties as appears just and equitable, having regard for the respective merits of the parties and the condition in which they will be left by the divorce, the party through whom the property was acquired and the burdens imposed upon the property for the benefit of either party and children.

We have said:

We apply an abuse of discretion standard when reviewing divisions of marital property and, recognizing that property settlements present complex problems requiring the trial court to assess the respective merits and needs of the parties, we will not disturb the result absent a manifest abuse of that discretion. *France v. France*, 902 P.2d 701, 703 (Wyo.1995); *Neuman v. Neuman*, 842 P.2d 575, 578 (Wyo.1992); *Kennedy v. Kennedy*, 456 P.2d 243, 247

(Wyo.1969). We will find an abuse of discretion when the disposition shocks the conscience of the court and appears so unfair and inequitable that reasonable persons could not abide it. *France*, 902 P.2d at 703. "In applying these standards, we review the evidence on appeal in the favor of the successful party below, ignoring the evidence of the unsuccessful party, and granting the successful party every reasonable inference that can be drawn from the record." *Id.* at 703–04.

*Mann v. Mann*, 979 P.2d 497, 500 (Wyo. 1999).

■ Decisions concerning child support and alimony are committed to the sound discretion of the district court. *Reavis v. Reavis*, 955 P.2d 428, 431 (Wyo.1998); *Scherer v. Scherer*, 931 P.2d 251, 253–54 (Wyo. 1997); *Triggs v. Triggs*, 920 P.2d 653, 656–57 (Wyo.1996); *Basolo v. Basolo*, 907 P.2d 348, 352–53 (Wyo.1995).

We recently clarified the definition of abuse of discretion when we said the core of our inquiry must reach "the question of reasonableness of the choice made by the trial court." *Vaughn v. State*, 962 P.2d 149, 151 (Wyo.1998). "Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously." *Id.* (quoting *Byerly v. Madsen*, 41 Wash.App. 495, 704 P.2d 1236, 1238 (1985)); *Basolo*, 907 P.2d at 353. We must ask ourselves whether the district court could reasonably conclude as it did and whether any facet of its ruling was arbitrary or capricious.

*Thomas v. Thomas*, 983 P.2d 717, 719 (Wyo. 1999).

*Property Division*

1. *Just and Equitable Issues.*

■ Mr. Carlton claims that the decision letter contains twenty-two errors in recounting the facts. The decision letter states and the record shows that he moved out of Blackwater Lodge in January of 1997 and moved in with his parents in Casper. He contends this finding of fact is inaccurate because it does not state that he was forced to leave Blackwater Lodge. The omission does not cause the factual finding to be erroneous. Mrs. Carlton ran the corporation from that time until the time of trial. Although Mr. Carlton disputes this, the trial court found that she ran the corporation with no help from him and with considerable interference. The record supports this finding of fact and includes evidence that Mrs. Carlton oversaw day-to-day operations, that Mr. Carlton paid bills without his wife's knowledge, overdrawing the bank account, and sent out brochures with incomplete and incorrect information, necessitating additional brochures. Although Mr. Carlton describes many efforts on his part to continue to promote the ranch to the tourism industry and resolve financial difficulties, the court, as the fact finder, was entitled to disbelieve his testimony that he was assisting rather than interfering and find as it did. We review the evidence on appeal in the favor of the successful party below, ignoring the evidence of the unsuccessful party, and granting the successful party every reasonable inference that can be drawn from the record. *France*, 902 P.2d at 703–04. We find no error.

■ Mr. Carlton claims a number of errors are contained in the following findings of facts:

In the analysis of the issues pertaining to division of property and allocation of debts in this case, the Court was struck by the fact that the corporation which Tom and Debra created to hold Blackwater Lodge is a sham corporation . . . . the parties used and spent corporate money for personal purposes, used personal funds to pay corporate debts, and generally failed to treat the corporation as a separate legal entity. The corporation was never anything but Tom and Debra Carlton, and after Tom left it was nothing more than Debra Carlton. The undisputed testimony was that these parties were provided virtually all of the needs of their lives at Blackwater Lodge. This is illustrated by Tom's testimony, for example, that he wants custody of [minor son] and that he is not asking for child support from Debra be-

cause the corporation would supply him with everything he needs.

\* \* \*

[I]t remains virtually impossible to go back through the corporate books, either before or after Tom's departure from Blackwater Lodge and separate personal and corporate income and expenditures and arrive at separate incomes for the corporation and the individuals who were involved in managing and operating it. Even if it could be done with some reasonable degree of accuracy, such an analysis would be an exercise in futility, because the corporation never served anything other than the personal needs and desires of the parties.

\* \* \*

Since this Court has determined that the corporation is a sham anyway, these difficulties with Debra's testimony are of little moment.

The record shows that both parties testified to commingling of personal and corporate monies. Mr. Carlton's assertions on appeal—that the court cannot fairly characterize the corporation as a sham because the evidence showed that the corporation was properly organized, stock certificates were issued, the corporation was not undercapitalized, kept corporate accounts and books, documented loans to the corporation and repayments to shareholders—do not cause the trial court's factual findings to be erroneous under the proper standard of appellate review.

In every other point made by Mr. Carlton, our review of the record shows that the trial court's findings of fact are supported by the evidence. In *France*, we repeated our longstanding rule that the division of marital property is within the sound discretion of the trial court and will not be disturbed on appeal absent a manifest abuse of that discretion, as well as our oft-repeated observation that "a just and equitable division is as likely as not to be unequal." *France*, 902 P.2d at 703–04. Those rules govern in this case as well. Our evaluation of whether the trial court's property division is, in fact, equitable must proceed from the perspective of the overall distribution of marital assets and liabilities, rather than from a narrow focus on the effects of any particular disposition. *Klatt v. Klatt*, 654 P.2d 733, 735 (Wyo.1982); *Paul*, 616 P.2d 707, 712 (Wyo.1980). From that perspective, the trial court is afforded considerable discretion to frame a distributive scheme appropriate to the peculiar circumstances of any individual case, and we will not disturb such a scheme absent a showing that the trial court clearly abused its discretion. *Sellers v. Sellers*, 775 P.2d 1029, 1030 (Wyo.1989); *Igo v. Igo*, 759 P.2d 1253, 1255 (Wyo.1988). The district court weighed all the factors required to be weighed in deciding how best to distribute the marital estate, namely, the ages of the parties, the length of the marriage and its separation, the assets and liabilities brought into the marriage including Mr. Carlton's contributions to the corporation, the entire financial impact on both parties, the abilities of the parties to earn a living, and the health of the parties.

The district court's examination of the parties revealed that both wanted Blackwater Lodge and each believed that their sons should continue to live there. The court was faced with awarding to one or the other or selling it. Blackwater Lodge's financial condition—its debt exceeded what Mr. Carlton deemed its value—would have supported a decision to sell it; however, the trial court spent considerable time examining the benefit to both sons because each desired to continue living and working there; the income it provided for them; Mrs. Carlton's success in running it on her own since the parties separated; and Mr. Carlton's ability to make an excellent living in the oil industry. Mr. Carlton has failed to demonstrate anything remotely resembling an abuse of discretion. The order of the district court distributing the marital estate is affirmed in all respects.

### 2. Animus Towards Mr. Carlton

Mr. Carlton contends that the court's errors, its admission of improper, prejudicial testimony about his character, and specific statements from the decision letter are evidence that the trial court ruled as it did in an effort to punish him for perceived wrongs.

■ At trial, the court heard Mrs. Carlton testify about Defendant's Exhibit LLL, a calendar that she created listing Mr. Carlton's many transgressions associated with alcohol, drugs, and physical altercations with the police and others. Mrs. Carlton contends that because Mr. Carlton stipulated to introduction at trial of Exhibit LLL in return for her agreeing to the introduction of his unsigned deposition, he cannot now complain that the trial court committed error by permitting him to make that choice. Mr. Carlton contends that its admission was plain error because the trial court violated W.R.E. 403 when it failed to conduct a balancing test for the avalanche of character evidence introduced at trial. This issue is controlled by principles of equity and "equity will not allow a party to switch horses in mid-stream." *Cargill, Inc. v. Mountain Cement Co.*, 891 P.2d 57, 67 (Wyo.1995). Mr. Carlton cannot stipulate to testimony at trial and then challenge it on appeal. Mr. Carlton is estopped from challenging the stipulation on appeal. *See Cargill*, 891 P.2d at 67; *Thunder Hawk v. Union Pacific Railroad Company*, 891 P.2d 773, 783 (Wyo.1995).

■ Mrs. Carlton also testified about derogatory statements made by Mr. Carlton about the trial judge. Arguably the comment about the trial judge was prejudicial, but we see that it was a single reference during a nine day trial. This Court presumes, in cases tried without a jury, "that the court in reaching its decision disregarded improperly admitted evidence unless the record affirmatively shows that the trial court's decision was influenced by improperly admitted evidence." *Gailey v. State*, 882 P.2d 888, 892–93 (Wyo.1994); *Feeney v. State*, 714 P.2d 1229, 1230 (Wyo.1986). The trial court's lengthy decision letter made no mention of this testimony. In a trial to the court where there is sufficient evidence to sustain a finding, the admission or exclusion of incompetent evidence is not grounds for reversal. *Id.; Gailey*, 882 P.2d at 893. We assume that the trial court was able to " 'sift the wheat from the chaff.' " *Id.; Feeney*, 714 P.2d at 1230 (quoting *Yount v. Strickland*, 17 Wyo. 526, 533, 101 P. 942, 944 (1909)).

■ Mr. Carlton quotes the following statements from the trial court's decision letter as proof of animus when considered in totality with other alleged error:

1. "The Court was disturbed by the fact that the parties, especially Tom, seemed to equate possession of Blackwater Lodge with the custody of their son."

2. "It was always apparent from Tom's testimony that he considered it okay to break the rules if he was the one who was breaking them or if Tom and Debra agreed to break them."

3. Tom was "... not only critical of the way Debra was operating, but was further constantly interfering with the operation of the business."

4. "Notwithstanding the amazing use of cash by Tom and Debra when they managed the business together, Tom was very critical of Debra's use of cash after he left Blackwater Lodge. Yet, his testimony revealed that in his efforts to micro-manage the business when he was not even there and was not participating in the actual, on the scene management, he arranged for brochures to be printed, advertising the lodge, and obtained cash from the corporate account and paid for them with cash!"

5. "In reviewing the testimony of the parties, the contradictions and inconsistencies in Tom's own testimony seem to be endless." .

6. "It was further apparent that Tom was inclined to abuse information that was made available to him."

7. "This web of inconsistencies spun by Tom is illustrated in part of his testimony about the Billings incident: ..."

8. "Tom has been almost completely unemployed since he left Blackwater Lodge in January of 1997, in spite of the fact that he is a highly-trained and skilled specialist in the oilfields, has very well-established contacts, and has worked for very substantial sums of money overseas for many years. Since January, 1997, he has lived with his parents, in Casper, Wyoming, and his testimony to the Court, incredible as it is, states that he is unable to find employment."

9. "Debra has operated Blackwater Lodge herself ever since Tom left in January of 1997. He has not provided support or other assistance of any other kind, but his interference has threatened the ability of Debra to continue to operate the lodge."

10. In discussing the division of the property the court commented on a statement made by the Appellant—"Asked what she would get from such a division, he said, 'She gets the benefits of walking away from a disaster.' In the division as provided above, Tom will have the benefit of walking away from a disaster."

11. "The court found his testimony about how hard it is to find work to have no credibility."

 The trial court may consider fault of the respective parties together with all other facts and circumstances surrounding the dissolution of the marriage for purposes of determining division of property. *Grosskopf v. Grosskopf,* 677 P.2d 814, 820 (Wyo.1984). We have also held that the trial court cannot divide the property in such a way that it would punish one of the parties. *Paul,* 616 P.2d at 715. As we must, we limit our review to an evaluation of the sufficiency of the evidence to support the trial court's decision, and we afford to the prevailing party every favorable inference while omitting any consideration of evidence presented by the unsuccessful party. *Triggs,* 920 P.2d at 657; *Cranston v. Cranston,* 879 P.2d 345, 351 (Wyo.1994). Findings of fact not supported by the evidence, contrary to the evidence, or against the great weight of the evidence cannot be sustained. *Jones v. Jones,* 858 P.2d 289, 291 (Wyo.1993). Similarly, an abuse of discretion is present " 'when a material factor deserving significant weight is ignored.' " *Triggs,* 920 P.2d at 657 (quoting *Vanasse v. Ramsay,* 847 P.2d 993, 996 (Wyo.1993)). Mr. Carlton does not contend that these findings violate any aspect of this standard and instead asks that we characterize the trial court's statements about him as criticisms and punishment. Our review indicates that these findings are supported by the evidence, do not ignore material facts, and are fairly characterized as an explanation of those basic facts supporting the court's conclusions. Al-

though on appeal it is arguably irrelevant that the findings are perceived as harsh towards Mr. Carlton, we do not find the court's statements to have been unnecessary when considering that the court was explaining its reasoning for divesting Mr. Carlton of all ownership in Blackwater Lodge without compensation. We find no abuse of discretion.

*Reasonable Basis for Award of Child Support and Alimony*

The parties' minor son remained at Blackwater Lodge after his parents separated, and Mrs. Carlton requested child support in January of 1997. Both parties asked for custody, and considerable evidence was taken at trial on that issue. Additionally, in accordance with the parties' stipulation, their son and the trial judge discussed the son's wishes in chambers and off the record. The evidence at trial established a strained relationship between Mr. Carlton and his son and indicated that the son had been limiting contact with Mr. Carlton since the parties' separation. Before trial, Mrs. Carlton arranged and paid for counseling for her son for the express purpose of repairing his relationship with his father. Mr. Carlton presented expert testimony that his son was suffering from parent alienation syndrome caused by Mrs. Carlton. The counselor testified that the syndrome does not exist, Mrs. Carlton should have primary custody, and visitation by Mr. Carlton should be restricted until he is further along in his therapy. The trial court agreed with this latter testimony in all respects and ordered Mrs. Carlton have custody and Mr. Carlton have restricted visitation.

 The trial court found or imputed net income of $3,500.00 per month to Mr. Carlton, and $1,600.00 to Mrs. Carlton and determined Mr. Carlton should pay $585.55 per month in child support retroactive to January of 1997. The arrearage was ordered payable in monthly installments. Mr. Carlton complains that this award was based on the court's determination that he is voluntarily unemployed. He claims that this determination is not based on any evidence in the record and constitutes error as a matter of law. He contends that his testimony estab-

lished that employment for directional drillers is nonexistent. According to the trial court's decision letter, it found this evidence to be incredible. Issues of credibility and the weight to be given to their testimony are matters to be resolved by the trier of fact, not an appellate court. *Semler v. Semler,* 924 P.2d 422, 424 (Wyo.1996); *Deen v. Deen,* 774 P.2d 621, 622 (Wyo.1989). The trial court's decision letter is very detailed and summarizes testimony from each witness. The decision letter and the evidence at trial show that Mr. Carlton made his living as a directional driller for years and continued his employment on a part-time basis after Blackwater Lodge was acquired. The trial court is entitled to recognize reasonable possibilities when making decisions. *Young v. Young,* 472 P.2d 784, 786 (Wyo.1970). The trial court was not confined to the husband's unemployment or potential future unemployment, but was justified in considering employment expectancy reasonably created by his experience, capability and physical ability.*Muller v. Muller,* 838 P.2d 198, 199 (Wyo. 1992). We find the trial court's findings are supported by the evidence and affirm the order of child support.

■ Additionally, the trial court determined that Mrs. Carlton was entitled to $300.00 per month in alimony for the period of October through May for a three year period. In making this award, the court correctly stated the applicable law as:

> In *Reavis v. Reavis,* 955 P.2d [428,] 438 (Wyo.1998), the Wyoming Supreme Court acknowledged that "the purpose of alimony is to provide a post-divorce substitute for the support provided to a spouse during the marriage," and that an award of alimony requires evaluation of the financial needs of each party and is affected by a determination of child custody.

The trial court found that Mrs. Carlton was entitled to alimony because of the significant debt of Blackwater Lodge and because it does not produce income from October until Memorial Day. We find no abuse of discretion in the award of alimony.

## CONCLUSION

Following a lengthy trial that produced extensive testimony, exhibits, and other evidence, the trial court issued a detailed and lengthy decision letter to explain its reasoning on issues of child custody, support and visitation, division of marital assets, payment of debts, and alimony. The final result of awarding Blackwater Lodge, custody, and alimony to Mrs. Carlton was not due to an improper desire to punish Mr. Carlton, but was based upon relevant, proper evidence in the record after consideration of all appropriate factors. The trial court did not abuse its discretion in any respect in the order, and it is affirmed.