**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

SCHARAY-DRENAENA BURNETT,

Petitioner - Appellant,

v.

NOLA BLACKBURN, Warden,
Wyoming Department of Corrections
Women's Center; PATRICK CRANK,
Wyoming Attorney General, State of
Wyoming,

Respondents - Appellees.

No. 05-8037

D. Wyoming

(D.C. No. 04-CV-13-CAB)

**ORDER AND JUDGMENT**[*]

Before **SEYMOUR**, **HARTZ**, and **McCONNELL**, Circuit Judges.

Scharay-Drenaena Burnett was convicted in Wyoming state court of aiding

and abetting first-degree murder. Her conviction was upheld on direct appeal to

the Wyoming Supreme Court, *see Burnett v. State*, 997 P.2d 1023 (Wyo. 2000),

---

[*]After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is
therefore ordered submitted without oral argument. This order and judgment is
not binding precedent, except under the doctrines of law of the case, res judicata,
and collateral estoppel. The court generally disfavors the citation of orders and
judgments; nevertheless, an order and judgment may be cited under the terms and
conditions of 10th Cir. R. 36.3.

and in state collateral proceedings. Her federal habeas application was denied by the district court, which then granted a Certificate of Appealability. We affirm.

## BACKGROUND

The pertinent underlying facts of this case are fully set forth in the opinion of the Wyoming Supreme Court affirming the conviction on direct appeal, and again in the order of the district court denying the habeas application. We repeat them only briefly to provide background.

On October 10, 1997, Ms. Burnett was at home with her boyfriend William Isham when Michael Sanders came to visit. Mr. Isham became intoxicated and apparently suicidal. He told Mr. Sanders and Ms. Burnett that he wanted to die. Ms. Burnett filled the bathtub while Mr. Sanders fashioned a knife out of a disposable razor, a plastic spoon, and some electrician's tape. Mr. Isham then lay down in the bathtub, while Ms. Burnett went into a bedroom to chant and meditate. Shortly thereafter Ms. Burnett heard Mr. Isham repeatedly scream, "Please, I changed my mind. I don't want to do this. I changed my mind." Ms. Burnett went to the bathroom and saw that Mr. Isham was injured, but still alive. Mr. Sanders said he needed a sharper knife and asked if she had a steak knife. Ms. Burnett retrieved a steak knife for him and returned to the bedroom, where she heard Mr. Isham continue to plead with Mr. Sanders. She returned to the bathroom and saw Mr. Sanders stab Mr. Isham in the neck with the knife. She

lit a cigarette for Mr. Sanders and stood outside the bathroom while Mr. Isham was stabbed several more times.

Ms. Burnett and Mr. Sanders then walked to a liquor store, purchased some beer and snacks, and returned home where they talked until about 5:00 in the morning. They agreed that if anyone asked they would say that Mr. Isham had gone to get beer and marijuana but never returned. Later that morning a co-worker of Mr. Sanders came to the home. Mr. Sanders showed him the body and asked for help in getting rid of it. The co-worker called the police, who went to the house that morning and found Ms. Burnett there with the body. Ms. Burnett was taken to the police station where she waived her *Miranda* rights and gave a detailed statement of the events of the previous night.

Ms. Burnett's counsel moved to have the statement suppressed. The hearing on the motion was continued at defense counsel's request pending the results of a psychological examination. It was never rescheduled and the motion was not pursued any further. Ms. Burnett subsequently rejected a plea offer and proceeded to trial. She was found guilty of aiding and abetting first degree murder and was sentenced to a life term of imprisonment.

In her federal habeas application Ms. Burnett argues: (1) she was deprived of effective assistance of trial counsel because her counsel (a) gave her incorrect information, which led her to reject a favorable plea agreement, (b) failed to

pursue and prevail on the suppression motion, (c) failed to use favorable parts of her statement to the police once it was admitted, and (d) failed to object to the state's use of evidence concerning witchcraft and other "satanic" practices; (2) she was denied due process and a fair trial when the trial court admitted the allegedly irrelevant and prejudicial evidence about witchcraft and "satanic" practices; and (3) she was denied effective assistance of appellate counsel because her appellate attorney failed to investigate adequately whether trial counsel accurately advised her about the plea offer and failed to argue cogently a due process claim.

## DISCUSSION

Because Ms. Burnett filed her federal habeas application after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act, its provisions apply. AEDPA provides that when a claim has been adjudicated on the merits in state court, a federal court will grant habeas relief only when the applicant establishes that the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2).

> Under the "contrary to" clause, we grant relief only if the state
> court arrives at a conclusion opposite to that reached by the Supreme

-4-

Court on a question of law or if the state court decides a case differently than the Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, relief is provided only if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. Thus we may not issue a habeas writ simply because we conclude in our independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004) (internal quotation marks, brackets, and citations omitted). Moreover, "a determination of a factual issue made by a State court shall be presumed to be correct" unless the applicant can rebut the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Having reviewed the briefs, record, and order of the district court, we affirm for substantially the same reasons stated by the district court, with these additional comments with respect to Ms. Burnett's claim that she received ineffective assistance of counsel when her attorney failed to pursue a motion to suppress the statements she made to the police the morning after the murder.

There is some ambiguity about whether the basis for Ms. Burnett's suppression motion is involuntariness under the Due Process Clause or an invalid *Miranda* waiver. But the result is the same regardless. To prevail on an ineffective-assistance-of-counsel claim, Ms. Burnett must show that her "counsel's representation fell below an objective standard of reasonableness,"

*Strickland v. Washington*, 466 U.S. 668, 688 (1984), and "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694. Our review is "highly deferential" and we "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id*. at 689 (internal quotation marks omitted). This means that Ms. Burnett must show that the suppression motion was "meritorious and that a reasonable probability exists that the verdict would have been different absent the excludable evidence." *Hooper v. Mullin*, 314 F.3d 1162, 1176 (10th Cir. 2002).

On appeal to this court, Ms. Burnett argues that the circumstances surrounding her confession were "inherently coercive" because she was only 19 at the time, had a difficult time standing up to men, was in her nightgown, had slept little, and had not taken her medication for her mental disability. Aplt. Br. at 21. Under the Due Process Clause a confession is involuntary "if the government's conduct causes the defendant's will to be overborne and [her] capacity for self-determination critically impaired." *United States v. McCullah*, 76 F.3d 1087, 1101 (10th Cir. 1996) (internal quotation marks omitted). Under *Miranda*, waiver of the right to counsel and the right to remain silent must be knowing, voluntary

and intelligent—"voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception" and "made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it." *United States v. Brown*, 287 F.3d 965, 973 (10th Cir. 2002). Both tests require us to consider the totality of the circumstances, including the individual characteristics of the defendant. *See McCullah*, 76 F.3d at 1101; *Brown*, 287 F.3d at 973.

Nothing in the record indicates that Ms. Burnett's confession was either coerced in violation of the Due Process Clause, or that her waiver of *Miranda* rights was not knowing, voluntary, and intelligent. The transcript of her police interview the morning after the murder reveals that she understood and voluntarily waived her rights to counsel and to remain silent. There is no evidence of police coercion, trickery, or psychological pressure. Her statement of the events of the previous night is detailed and lucid, and there is no indication that she is suffering because of a lack of sleep or because she had not taken her medicines. The interview is lengthy, but at no point does Ms. Burnett object to the length of the interview, to any question, or to her surroundings. There is simply nothing in the interview or its surrounding circumstances that would have led the district court to suppress the statements. Therefore, even if Ms. Burnett

could establish that her counsel's performance fell below an objective acceptable standard, she cannot demonstrate prejudice under *Strickland*.

We AFFIRM the district court's judgment.

ENTERED FOR THE COURT

Harris L Hartz
Circuit Judge