2010 WY 78

**Lee W. SANNING, Appellant (Defendant),**

v.

**Jamison Pike SANNING,
Appellee (Plaintiff).**

**No. S–09–0202.**

Supreme Court of Wyoming.

June 15, 2010.

Representing Appellant: C.M. Aron of Aron & Hennig, LLP, Laramie, Wyoming.

Representing Appellee: Devon P. O'Connell of Pence and MacMillan LLC, Laramie, Wyoming.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

KITE, Justice.

[¶ 1]  The district court awarded a cabin to Jamison Sanning (Wife) as part of the property distribution incorporated into the parties' divorce decree. Lee Sanning (Husband) claims the district court abused its discretion by relying upon sentimental value to award the cabin to Wife and the court's factual findings regarding the cabin were not supported by the trial evidence.

[¶ 2]  We conclude that the district court did not abuse its discretion and affirm.

### ISSUES

[¶ 3]  Husband presents the following issues on appeal:

1.  Whether a divorcing spouse's claimed "sentimental value" in joint marital property permits the disproportionate division of marital assets.

2.  Whether a trial court abuses its discretion when its findings on division of property in a divorce are not supported by the evidence.

Wife maintains that the district court did not abuse its discretion in dividing the marital assets.

### FACTS

[¶ 4]  Wife's grandparents owned a cabin which is located on state land adjacent to

Priest Lake in Idaho. The grandparents had purchased the cabin in the 1950s, and Wife spent many summers there while growing up.

[¶ 5] After they were married, Husband and Wife spent time at the cabin. The grandparents, who were in their eighties, decided that they would dispose of the cabin because it had become too expensive and difficult to maintain. They considered giving it to family members, but were worried about the burden of owning the cabin, so they offered it for sale. Husband and Wife decided they would like the cabin, and they purchased it in 2002 for $50,000.

[¶ 6] Wife filed for divorce on March 5, 2008. The parties were able to agree on custody of their young daughter, but could not agree on the distribution of the marital property. The primary item in dispute was the Idaho cabin. Evidence presented at trial established that Husband's family had gifted the parties the $50,000 used to purchase the property. The evidence also indicated that Husband was fond of the cabin, had done a great deal of work on it and had the ability to maintain it. Wife testified that the cabin held many memories for her and her family, she had paid the lease and other expenses associated with the cabin after the parties separated, and she could maintain it with her family's help.

[¶ 7] The district court's property distribution, explained in its decision letter, awarded the cabin to Wife, but required her to reimburse Husband for the purchase price. After the district court entered the divorce decree, Husband appealed.

## STANDARD OF REVIEW

[¶ 8] The district court has broad discretion to divide marital property in a divorce. *Root v. Root,* 2003 WY 36, ¶ 8, 65 P.3d 41, 44 (Wyo.2003). *See also,* Wyo. Stat. Ann. § 20–2–114 (LexisNexis 2009). We review the district court's disposition of marital property using the abuse of discretion standard. *Sweat v. Sweat,* 2003 WY 82, ¶ 6, 72 P.3d 276, 278 (Wyo.2003). "An abuse of discretion occurs when the property disposition shocks the conscience of this court and ap-

pears to be so unfair and inequitable that reasonable people cannot abide it." *Hall v. Hall,* 2002 WY 30, ¶ 12, 40 P.3d 1228, 1230 (Wyo.2002). In determining whether the district court abused its discretion, we consider only the evidence of the successful party and grant to that party every favorable inference that can be drawn from the record. *Sweat,* ¶ 6, 72 P.3d at 278. *See also, Welch v. Welch,* 2003 WY 168, ¶ 4, 81 P.3d 937, 938 (Wyo. 2003).

## DISCUSSION

[¶ 9] The district court's decision letter explained its rationale for awarding the cabin to Wife, as follows:

Turning attention to the item of greatest dispute in this divorce proceeding, the Court addresses the Priest Lake, Idaho cabin, which has been in [Wife's] family for generations. The evidence revealed that this cabin has deep roots in [Wife's] family. [Wife's] childhood and her family history are replete with cherished memories of Priest Lake. By all accounts, it is a place impossible not to love. On the downside, the cabin is aging, having been built in the 1930's, and requires considerable yearly maintenance. Additionally, the lease rates continue to increase, making the cabin an expensive family heirloom. Even so, not a single member of [Wife's] family would part with it. While [Wife's] grandparents found themselves in distress years ago when they were no longer physically able to care for the property and none of their grandchildren could afford to care for it, the fact remains that this cabin is the heart and soul of the family. That [Wife's] family sold the cabin to [Husband and Wife] for a significantly reduced rate is telling of their intent to keep the cabin "in the family." However, the Court also is mindful that [Husband and Wife] used funds gifted from [Husband's] family to fund the purchase of the cabin.

The Wyoming Supreme Court ... addressed a somewhat comparable situation in *Wallop v. Wallop,* 2004 WY 46, 88 P.3d 1022 (Wyo.2004) (and cases cited therein), where the Court addressed considerable ranch property that was partially inherited

and partially purchased by the husband. Although the wife had an interest in the ranch, such was done in consideration of a continuing marriage. The same can be said here, where, at the time of the sale, one family member raised the issue of divorce, which was shrugged off as an impossibility. Given all of the factors this Court must consider, including (but not limited to) the respective merits of the parties; the condition in which the parties will be left after the divorce; the party through whom the property was acquired; and the burdens imposed upon the property for the benefit of the parties and their child, this Court concludes that the Priest Lake cabin should be awarded to [Wife], subject to the return of the $50,000.00 purchase price to [Husband] in recognition of his family's contribution to the purchase.

[¶ 10] Section 20–2–114 governs property disposition in divorce cases:

In granting a divorce, the court shall make such disposition of the property of the parties as appears just and equitable, having regard for the respective merits of the parties and the condition in which they will be left by the divorce, the party through whom the property was acquired and the burdens imposed upon the property for the benefit of either party and children.

The district court has considerable discretion in determining what weight each statutory factor merits. *See, e.g., Boyle v. Boyle,* 2006 WY 124, ¶ 9, 143 P.3d 368, 371 (Wyo.2006); *Humphrey v. Humphrey,* 2007 WY 72, ¶ 15, 157 P.3d 451, 454–55 (Wyo.2007).

▪ [¶ 11] Husband claims that the district court improperly awarded the cabin to Wife based upon an improper factor—sentimental value.[1] He argues that *Broyles v. Broyles,* 711 P.2d 1119 (Wyo.1985) prohibits consideration of sentimental value in awarding property. However, his interpretation of the holding in *Broyles* is incorrect. The discussion of sentimental value in that case was in the context of calculating damages for the wife's improper retention of property

awarded to husband in the divorce decree. We ruled that the damages for conversion of personal property are calculated using the fair market value of the property. "Generally, a claimant may not recover for the sentimental or fanciful value placed on lost property such as photographs, portraits and heirlooms." *Id.* at 1124. Although *Broyles* states that sentimental value may not typically be used to establish damages for property wrongfully converted, it does not state that sentimental value cannot be considered in awarding property in a divorce case.

[¶ 12] Section 20–2–114 does not mention sentimental value as a factor that may be considered in making disposition of property. However, it does state that the district court may consider a variety of factors, including the "party through whom the property was acquired." *Id.* That factor may, by definition, incorporate the concept of sentimental value.

[¶ 13] As the district court correctly noted, *Wallop v. Wallop,* 2004 WY 46, 88 P.3d 1022 (Wyo.2004) bears consideration in this case. In *Wallop,* we reviewed a property distribution that included awarding the husband a ranch that had belonged to his family for many years. The evidence established that husband had inherited part of the ranch and then purchased his sisters' interests. *Id.,* ¶ 17, 88 P.3d at 1028–29. We concluded that the district court properly applied the statutory factors when it awarded the ranch property to the husband. *Id.,* ¶¶ 26, 32, 88 P.3d at 1030, 1032.

[¶ 14] Similarly, it is clear in this case that the district court considered the statutory factors when it awarded the cabin to Wife. The evidence established that the cabin had been acquired through Wife's family, as it had belonged to her family for many years and Husband and Wife purchased it from her grandparents for $50,000. Although the district court made no express finding on the value of the cabin at the time the parties purchased it, everyone agreed that the price was well below market value. The parties stipulated that the value of the cabin at the

---

1. Although Husband mentions the fact that the property distribution was disproportionate, i.e., he received property valued at $209,947.68 and

Wife received property valued at $378,808.03, he does not specifically argue that the total distribution was unjust and inequitable.

time of the divorce was $350,000. Thus, it was clear that Wife's grandparents provided a significant gift to the parties when they allowed them to purchase the cabin at the reduced price. The district court recognized in its property disposition that the $50,000 used to purchase the cabin was a gift from Husband's family and required Wife to reimburse Husband in that amount. We conclude, therefore, that the district court considered more than just "sentimental value" in awarding the cabin to Wife. It appropriately relied upon the statutory factors, including the party from whom the property had been acquired, in making its determination.

[¶ 15] Husband also asserts that the district court's findings about Wife's emotional attachment to the cabin were erroneous. Under our standard of review, we consider the evidence in the light most favorable to Wife. Husband claims that the district court's finding that the cabin had "been in [Wife's] family for generations" was incorrect. He asserts that the cabin had only been in the family for half a generation. Regardless of how the finding was phrased, it is clear from the record that the property had been in Wife's family for over fifty years and had been enjoyed by multiple generations of her family.

[¶ 16] Next, Husband argues that Wife's family was not really that attached to the cabin on Priest Lake because some of her family members have large cabins on a different lake and the family had allowed the grandparents to place the property up for sale. These circumstances do not necessarily mean, as Husband suggests, that the cabin was not important to Wife's family. The fact that, in the end, the grandparents sold the cabin to Husband and Wife for a price far below market value demonstrates that they wanted the cabin to stay in the family.

[¶ 17] Husband's testimony confirms that the cabin was important to Wife's family. He testified:

Q. ... Mr. Sanning, this cabin, we can agree, is important to the [Wife's] family heritage. You don't deny that, do you?

A. No.

Q. And we can agree that [Wife's] family enjoyed many years, grandparents, grandchildren, what have you, many years of happy memories up there?

A. Yes.

Q. And we also can agree that my client's father, his ashes are scattered on the upper Priest Lake, correct?

A. Correct.

Q. And, in fact, we also can agree that a family member was married up there, [Wife's sister]; is that right?

. . . .

A. At Elkins Resort on the lake. Yes.

Q. All right. That lake has some pretty strong significance to my client and her family; fair to say?

A. Yes.

[¶ 18] Husband makes a somewhat strange argument that the family was not really attached to the cabin, but rather to Priest Lake. He grounds this argument on the fact that Wife's father's ashes were scattered on the lake and Wife's sister was married at another property on the lake. This argument is not convincing. The cabin is situated on the lake and provides a place to stay while visiting the lake. It makes no difference whether the family's attachment is to the cabin, to the lake or, more likely, to both; it is a distinction without a difference.

[¶ 19] In sum, the district court specifically stated that it was considering the statutory factors and there is nothing in the record to indicate otherwise. Under these circumstances, the award of the cabin to Wife does not shock our conscience or appear to be so unfair and inequitable that reasonable people cannot abide it. *See Hall,* ¶ 12, 40 P.3d at 1230. The district court properly exercised its discretion when it awarded the cabin to Wife, on the condition that she reimburse Husband for the money gifted by his family to purchase the cabin.

[¶ 20] Affirmed.