# IN THE SUPREME COURT, STATE OF WYOMING

## 2013 WY 112

APRIL TERM, A.D. 2013

September 27, 2013

SUSAN LYNN KUMMERFELD,

Appellant
(Plaintiff),

v.

S-13-0028

JOHN GARY KUMMERFELD,

Appellee
(Defendant).

*Appeal from the District Court of Campbell County*
*The Honorable Dan R. Price II, Judge*

*Representing Appellant:*
> Mary Elizabeth Galvan of Galvan & Fritzen, Laramie, WY.

*Representing Appellee:*
> DaNece Day of Lubnau Law Office, P.C., Gillette, WY.

*Before KITE, C.J., and HILL, VOIGT, BURKE, and DAVIS, JJ.*

NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**HILL,** Justice.

[¶1] In her appeal of the district court's property allocation, Susan Lynn Kummerfeld (Wife) contends that the court erred when it only gave her 23% of the total assets, with the remainder going to her ex-husband John Gary Kummerfeld (Husband). We affirm.

## ISSUE

[¶2] Wife states her single issue as follows:

> Whether the district court abused its discretion in the manner in which it divided the property between the divorcing parties by allocating 23% of the property to Wife and the remainder to Husband.

## FACTS

[¶3] Husband and Wife were married on January 21, 1995. Husband and Wife were married for seventeen years at the time they decided to separate. The marriage was a second marriage for each party. Husband, who was in his late fifties when the parties married, brought over $1 million in assets to the marriage.[1] Wife, who was in her early forties, brought no assets to the marriage.

[¶4] Husband is a third-generation rancher in Campbell County, Wyoming and still maintains the 1,080-acre family ranch outside of Rozet. During the parties' marriage Husband continued the ranch work while also operating his construction and oil field business. Wife did not work outside the couple's home. Prior to the marriage Wife worked at Sam's Club in Casper. Having been previously injured, Wife receives Social Security Disability income of $1,460.00 per month. Eventually, Husband sold his interest in the construction company for $2.6 million and he also agreed to purchase his family ranch. Prior to his purchase of the entire ranch, Husband's family gifted a 20-acre parcel to the parties as a wedding gift, separate from the ranch as a whole. A manufactured house was placed on that parcel, which is where the couple resided during their marriage.

[¶5] During the marriage, in 1999 Husband entered a formal contract with his parents to purchase the family ranch for $132,000.00. As noted, in 2001 Husband sold his interest in his construction company for approximately $2.6 million. The parties separated in 2011 and these two assets – the ranch and the proceeds from the construction company sale – became the primary issue in the couple's divorce.

---

[1] Though no prenuptial agreement was entered, Husband had, for purposes of securing a bank loan, a financial statement prepared establishing his assets near the time of the parties' marriage.

1

[¶6]    After trial and after having valued the total assets to be divided between the parties at approximately $4.5 million, the district court awarded Wife over $1 million and Husband approximately $3.4 million.  Wife appealed the district court's decision.  More facts will be elicited hereinafter as necessary.

## STANDARD OF REVIEW

[¶7]    Our standard of review in cases involving property division is well-established:

> The district court has broad discretion to divide marital property in a divorce.  *Sanning v. Sanning*, 2010 WY 78, ¶ 8, 233 P.3d 922, 923 (Wyo. 2010); *Root v. Root*, 2003 WY 36, ¶ 8, 65 P.3d 41, 44 (Wyo. 2003).  *See also*, Wyo. Stat. Ann. § 20-2-114 (LexisNexis 2009) [see below].  We review the district court's disposition of marital property using the abuse of discretion standard.  *Sanning*, ¶ 8, 233 P.3d at 923.  *See also, Sweat v. Sweat*, 2003 WY 82, ¶ 6, 72 P.3d 276, 278 (Wyo. 2003).  "An abuse of discretion occurs when the property disposition shocks the conscience of this court and appears to be so unfair and inequitable that reasonable people cannot abide it."  *Hall v. Hall*, 2002 WY 30, ¶ 12, 40 P.3d 1228, 1230 (Wyo. 2002).

*Rosendahl v. Rosendahl*, 2011 WY 162, ¶ 3, 267 P.3d 557, 559 (Wyo. 2011).

## DISCUSSION

[¶8]    Wife's only argument on appeal is that the trial court inequitably divided the marital assets.  She asserts that the district court ignored the great weight of the evidence in segregating the Rozet ranch, which she states was purchased during the marriage, and the parties' investments from the proceeds of the construction business, from the marital estate.  As to the ranch, Wife contends that it was "acquired wholly during the marriage, with marital income."  She makes essentially the same argument regarding the investment accounts arguing that because the construction business was sold during the marriage, the award is substantially imbalanced.  Husband, of course, disagrees with Wife and maintains on appeal that the district court did not abuse its discretion.

[¶9]    In property division cases we look to Wyo. Stat. Ann. § 20-2-114 (LexisNexis 2013), which states:

> **§ 20-2-114.  Disposition of property to be equitable; factors; alimony generally**.

… [I]n granting a divorce, the court shall make such disposition of the property of the parties as appears just and equitable, having regard for the respective merits of the parties and the condition in which they will be left by the divorce, the party through whom the property was acquired and the burdens imposed upon the property for the benefit of either party and children. The court may decree to either party reasonable alimony out of the estate of the other having regard for the other's ability to pay and may order so much of the other's real estate or the rents and profits thereof as is necessary be assigned and set out to either party for life, or may decree a specific sum be paid by either party.

With this statute and the standard of review in mind we turn to our case law, which is also quite helpful. First, in *Sanning v. Sanning*, 2010 WY 78, 233 P.3d 922 (Wyo. 2010), the husband claimed that the district court improperly awarded the cabin to wife based upon sentimental value. This Court held that § 20-2-114 permitted the district court to consider a variety of factors in distributing the property, including the party through whom the property was acquired. That factor incorporated the concept of sentimental value, and this Court ultimately upheld the district court's decision to award the cabin to the wife based upon a substantial discount at which it was purchased from Wife's grandparents and offsetting the contributions by Husband and his family with a monetary distribution to Husband.

[¶10] Likewise, in *Wallop v. Wallop,* 2004 WY 46, ¶¶ 14-15, 88 P.3d 1022, 1028 (Wyo. 2004), this Court upheld the award of a family ranch to the husband although it resulted in a property distribution weighted heavily in husband's favor. We stated:

Wife's primary contention is that the trial court inequitably divided the marital assets. She asserts that Husband was awarded the Canyon Ranch, which caused a substantial imbalance in the value of the property awarded each party. Husband counters that the trial court properly considered the merits of the parties and through whom the Canyon Ranch and other property were acquired in fashioning a just and equitable division.

This court in *Hall v. Hall*, at ¶¶ 13-14, addressed a similar argument. In that case this court recognized:

The trial court possesses a great amount of discretion in dividing marital property. A just and equitable division of property is just as likely not to be equal.

3

*Carlton v. Carlton*, 997 P.2d 1028, 1032 (Wyo. 2000). Although the trial court cannot divide the property in such a way that it would punish one of the parties, it may consider fault of the respective parties, together with all other facts and circumstances surrounding the dissolution of the marriage in dividing a couple's marital assets. 997 P.2d at 1034. We are required to limit our review of the record to an evaluation of whether the trial court's decision was supported by sufficient evidence, and we afford to the prevailing party every favorable inference while omitting any consideration of evidence presented by the unsuccessful party. *Id*. Findings of fact not supported by the evidence, contrary to the evidence, or against the great weight of the evidence cannot be sustained. *Id.*

*Id.*, at ¶ 14. In *France v. France*, 902 P.2d 701, 704 (Wyo. 1995) (emphasis added) we stated:

The property which is subject to division under our statute consists of property **which is the product of the marital union and was acquired during the course of the marriage by the joint efforts of the parties**. …*Wyo. Stat. § 20-2-114 includes as a factor, "the party through whom the property was acquired …." In Warren v. Warren, 361 P.2d 525 (Wyo. 1961), we held property, which was inherited by or given to that party, can properly be awarded to the party by whom it was inherited or given. In Paul v. Paul, 616 P.2d 707 (Wyo. 1980), we held it is not an abuse of discretion to award to a party the property he brought to the marriage*.

In *France,* we affirmed a property division in which the wife received an overwhelming majority of the property. We agreed with the trial court that, because most of the couple s property was brought into the marriage by the wife or inherited by her, she was the appropriate party to receive it upon their divorce. *France*, at 706. *In accord see Pittman v. Pittman*, 999 P.2d 638, 640 (Wyo. 2000), where we held that when most of the property was brought into the marriage by one party or acquired during the marriage through that party,

> it is not unreasonable that the party through whom the property was acquired receive a larger share.

*Id.* (Emphasis in original.)

[¶11] In this case it is undisputed and acknowledged by both parties that the Rozet ranch has been in Husband's family for three generations. Husband's family owned the ranch his entire life and when Husband was 18 years old, he bought cattle and began to run those cattle on the ranch. In 1959 he built a five-bedroom house on the ranch with the hope of someday living there as an adult. Husband's accountant and son-in-law testified regarding the time and money Husband invested in the ranch. In fact, Husband paid his Father rent over the years, which was supposed to be "applied" to "buying the ranch." When Husband agreed to purchase the ranch from his parents for $132,000.00, he did so at that reduced price based upon his 40 years of working the ranch. That the district court found that the dealings between Husband and his parents to purchase the ranch were not at "arm's length" is significant. Though the parties argue as to whether or not the ranch's sale price was below fair market value, the district court properly focused on what was of real value in its distribution of the ranch: through whom the property was acquired. While the actual ***purchase*** of the ranch was done during the parties' marriage, it nevertheless remains a fact that the ranch was originally Husband's family asset.

[¶12] We find that the evidence weighs in favor of Husband. Wife argues vehemently that there was no testimony to any contribution other than rent and no testimony regarding Husband's ranching operating. Instead, she contends that the evidence demonstrated only that Husband had simply been allowed to run cattle on the ranch as a renter over the years. Yet, the ranch belonged to his family for three generations. Husband occupied the ranch from the time he was eighteen years old. The 'rent' he paid was to be applied to an eventual purchase of the ranch and Husband began that process while married to Susan. The record reflects that the ranch property has been in Husband's family for generations and that a reduced price sale of the ranch to Husband in effect compensated for money, time, and effort spent on the ranch.

[¶13] Finally, Wife generally argues that her non-economic contributions must be considered by the district court to have increased the value of the Ranch. However, Wife fails to particularly enumerate any of her non-economic contributions or how they actually increased the value of the ranch. Instead she identifies these contributions in very broad terms. Viewing the evidence in the light most favorable to Husband and giving him the benefit of all reasonable inferences as we are required to do under the applicable standard of review, we conclude that the district court did not abuse its discretion when it awarded the ranch to Husband.

***Investment Accounts***

[¶14] Husband's interest in K&H Construction provided him proceeds from the sale of his interest in that business totaling approximately $2.6 million, with a tax consequence of $900,000.00. The proceeds of this sale were placed in investment accounts with DA Davidson. The district court awarded monies in the DA Davidson accounts totaling $106,202.00 to Wife and the remaining amounts in the DA Davidson and an Edward Jones account totaling $1,814,334.00 to Husband.

[¶15] Proceeds from the sale of the construction business were also used to buy three houses in Nevada, two of which the district court awarded to Wife, totaling a value of $418,400.00. The remaining house was awarded to Husband and held a value at the time of $361,200.00. Wife was also awarded bank accounts amounting to $213,656.00 and a cash payment of $235,000.00. Husband was awarded an $81,000.00 bank account. However, Wife contends that in its distribution of assets the district court failed to give proper consideration to the increases in the value of the parties' investments and thus abused its discretion when it divided the property.

[¶16] Wife argues again that her non-economic contributions must be considered by the district court to have increased the value of the overall marital estate. Wife largely points to the acquisition of the ranch and to the couple's joint investments from the proceeds of the sale of the construction business. Again, Wife fails to particularly enumerate any of her non-economic contributions or how they actually increased the value of the marital estate. Our review of the record paints a different picture. While we see the value of Wife as a homemaker and do not disvalue that contribution, it is Husband's efforts that remained the primary source of the couple's financial situation. Once more, viewing the evidence in the light most favorable to Husband and giving him the benefit of all reasonable inferences, we must conclude that the district court did not abuse its discretion when it divided the investment accounts as it did. We also note that evidence exists in the record that Wife was possibly funneling her Social Security income to a hidden account; that Wife misled the trial court as to the nature of personal property; that Wife removed $81,000.00 from a joint account to another account without Husband's knowledge; and that Wife only disclosed at trial an $80,000.00 loan she made to her son from joint assets.

[¶17] Wife relies on a number of Wyoming cases in support of her argument. In *Breitenstine v. Breitenstine*, 2003 WY 16, 62 P.3d 587 (Wyo. 2003), this Court found that premarital assets were "treated as marital" where the husband co-mingled his premarital and inherited assets by placing all into joint accounts to which both parties had access. This is unlike the present case where Husband did not combine accounts and titles. Rather, most accounts remained separate and Wife did not have access to accounts in Husband's name nor did she have access to any ranch accounts, let alone was her name on the ranch property.

[¶18] Likewise, Wife cites to *France v. France*, 902 P.2d 701 (Wyo. 1995) as an example of this Court's focus on assets that were acquired or increased in value as "products of the union." There, even though husband worked on wife's family's ranch, he had no interest in the ranch because those assets were not created by the couple during the marriage. Here, Husband had spent 41 years prior to the marriage working toward his eventual assets.

[¶19] We remind the parties that the trial court possesses a great amount of discretion in dividing marital property. A just and equitable division of property is just as likely not to be equal. *Carlton v. Carlton*, 997 P.2d 1028, 1032 (Wyo. 2000).

## CONCLUSION

[¶20] Decisions regarding the division of marital property are within the trial court's sound discretion, and we will not disturb them on appeal unless there is a clear showing of an abuse of discretion. Here, the district court properly assessed the facts and considered each of the required factors in making its determination. We hold that there is no abuse of discretion. Affirmed.