# IN THE SUPREME COURT, STATE OF WYOMING

## 2016 WY 38

OCTOBER TERM, A.D. 2015

*March 15, 2016*

WENDELLYN KAY DANE,

**Appellant**
**(Plaintiff),**

**v.**

S-15-0171

KRIS ALAN DANE,

**Appellee**
**(Defendant).**

*Appeal from the District Court of Sheridan County*
*The Honorable William J. Edelman, Judge*

*Representing Appellant:*
James P. Castberg, Castberg Law Office, Sheridan, Wyoming

*Representing Appellee:*
Stacy M. Kirven, Barney & Graham, LLC, Sheridan, Wyoming

*Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.*

NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**DAVIS**, Justice.

[¶1]    After slightly more than three years of marriage, Wendellyn Dane (Wife) filed for divorce from Kris Dane (Husband).  She appeals from the decree entered in that case.  We affirm.

## ISSUES

[¶2]    Wife identifies three issues, which we condense into two and restate as follows:

> I.  Did the district court abuse its discretion in denying Wife's motion to amend her complaint to add a promissory estoppel claim, and in failing to enforce the alleged promise in its distribution of the couple's property?

> II.  Did the district court abuse its discretion by dividing the marital property as it did?

## FACTS

[¶3]    Husband and Wife first met in late 2008 when he decided to sell his condominium in Naples, Florida.  Wife was a real estate agent designated to handle the resale of units in the condominium project of which his property was a part.  At the time, Husband was approximately 61 years old, and Wife was 55.

[¶4]    After their initial contact, they did not see each other again until April of 2009, when Wife telephoned Husband to ask if she could rent a room in his condo.  She had sold her own home and was planning to leave her boyfriend, with whom she was sharing an apartment.  Husband agreed to rent her a furnished room and a bathroom for $500 per month.[1]

[¶5]    Within two months their relationship became romantic, and Wife no longer paid rent or contributed to household expenses.  Over a period of two years, Husband took her golfing and on trips, and he paid approximately $8,000 in relation to her arrest for driving while intoxicated after drinking wine with a girlfriend one afternoon.

[¶6]    During those two years, Husband began to consider retiring, winding down his day-to-day involvement in businesses in which he had an interest, and moving to a cooler area of the country.  He first concentrated on mountainous areas in the eastern United

---

[1] Although she had approximately thirty years of experience in the real estate business, the national home financing crisis of that period was not kind to Wife.  The costs of her business began to exceed her income, which she supplemented at points with a second job and, ultimately, with unemployment compensation.

1

States, and he took Wife on a trip to explore a variety of options "up and down the east coast." He liked several locations, but she did not, and they thereafter shifted their focus to states in the Rocky Mountains. Their research and the recommendations of others eventually led them to take a trip to Sheridan, Wyoming in February of 2011.

[¶7]   During that trip, Husband made an offer on a house. In early April, the couple moved to Sheridan, and Husband completed the purchase of that home. A month later, he closed on the sale of his Florida condominium. On July 9, 2011, the couple wed.

[¶8]   Husband made the down payment on the Sheridan home from his personal funds, and because he and Wife were not yet married at the time, titled it only in his name. It was furnished almost entirely with items he had purchased for his condominium, and he made all the mortgage payments during the marriage. Husband also paid all household expenses and for all vehicles, because Wife brought few assets to the marriage and worked only sporadically at a real estate office in Sheridan.[2] Husband's income came from Social Security retirement benefits, from distributions related to his interests in two Florida business entities, and from a structured stock repurchase involving one of those entities.[3]

[¶9]   On September 5, 2014, after slightly more than three years of marriage, Husband told Wife he wanted a divorce. Four days later she sued him for divorce. On September 15, she filed a motion for temporary support, for payment of her attorney fees and prospective expert witness fees, and for temporary possession of their house and a 2013 Ford truck. Husband answered the complaint on September 24.

[¶10] The district court scheduled a pretrial conference for February 26, 2015, and set trial for March 4, 2015. On December 18, 2014, it entered an order on Wife's motion for temporary support. Wife was granted temporary possession of the marital home and the pickup truck. Husband was ordered to make all mortgage and loan payments on that property, and to pay all other expenses relating to them, except for fuel for the pickup truck. The court also required Husband to continue to pay Wife's health insurance premiums and $2,000 per month in temporary support starting on January 1, 2015. However, it denied Wife's request for payment of her attorney fees and held consideration of her request for payment of expert witness expenses in abeyance until after trial.

---

[2] Husband procured her a second credit card on his Visa account and opened a checking account for her as well. If she needed funds, he would write her a check from his separate account for her to deposit in her own.

[3] The district court concluded that Husband regularly received approximately $2,500 per month from rents received by Coastal Building Partnership and approximately $5,000 per month from a "buy back" by Maritime Venture I, Inc.

[¶11]  On January 21, 2015, Wife filed a motion to amend her complaint pursuant to W.R.C.P. 15 so as to add a cause of action for promissory estoppel.  She claimed that, in February of 2011, Husband "told [her] if [she] moved to Wyoming with him and [sic] that he would take care of [her] the rest of [her] life, and that [she] wouldn't have to work because [they] would have lots of money."

[¶12]  At the February 12 hearing on the motion to amend, the district court found that Wife possessed all the information needed to raise the promissory estoppel claim no later than six days after filing her original complaint, and that allowing the amendment a little over two weeks prior to the trial date would unduly delay the trial.  It also found that such a delay would prejudicially extend Husband's obligations under the court's temporary support order.  However, it also ruled that it could and would consider the circumstances of the parties' marriage—including the alleged promise—in equitably dividing their property.  The court therefore concluded that justice did not require leave to amend the complaint, and it denied Wife's motion.  It entered its order to that effect on March 4, 2015.

[¶13]  On April 23, 2015, the district court entered its "Findings of Fact, Conclusions of Law, and Decree of Divorce."  To briefly summarize that 21-page document, the court found it significant that the parties had a relatively brief marriage, that Husband had retired nearly a year before first visiting Wyoming, that he had acquired the great majority of the assets whose benefits the parties enjoyed long before their marriage, and that Wife had not contributed to the value of those assets.  Moreover, from about the time she moved into Husband's Florida condominium through trial, Wife had only negligible earnings and lived almost entirely on Husband's income.

[¶14]  As for the alleged promise she described in the motion to amend her complaint, the court appears to have found Husband's version of his statements more credible.  He testified to several conversations relating to a move to Wyoming.  At one point, Wife said she would go only if they were engaged.  In response, Husband bought her an engagement ring.  Another time she expressed concern about whether they could afford to live in Wyoming.  He replied that it would be cheaper to live in Wyoming than in Florida, and that they would have enough money so that she would not need to work during their marriage.

[¶15] The district court distributed the couple's property and property-related obligations to the party who brought it into the marriage, if it was acquired before they married.  If an asset was purchased during the marriage, it awarded it to the party whose assets were used to purchase it.  As a result, the court awarded the majority of the property to Husband, while allowing Wife to keep $22,800 worth of jewelry Husband had given her, plus other miscellaneous items.  It also awarded her an additional $45,000 "equalization payment."

3

[¶16] Wife timely perfected this appeal.

## DISCUSSION

### Amendment of Complaint

[¶17] Wife's motion to amend her complaint was filed long after Husband filed his answer. Accordingly, absent Husband's consent, W.R.C.P. 15 permitted the amendment only upon leave of the district court, which is to be "freely given when justice so requires." W.R.C.P. 15(a). This Court has read those last four words as committing the decision to allow an amendment to a trial court's discretion. That kind of decision is subject to reversal only for an abuse of that discretion, and a court may properly deny leave to amend if amendment would cause undue delay, or if it would unduly prejudice the defendant. *Foxley & Co. v. Ellis*, 2009 WY 16, ¶ 32, 201 P.3d 425, 433 (Wyo. 2009).

[¶18] These two factors were paramount in the district court's decision to deny the motion. Wife filed her complaint on September 9, 2014, and on September 15, nine days prior to the filing of Husband's answer, she filed an affidavit in conjunction with her motion for temporary support, in which she set out the facts forming the basis of the motion to amend her complaint. However, she did not seek leave to amend the complaint to add a promissory estoppel claim until more than four months later, after the parties had completed discovery and six weeks prior to trial. We note that although the existence of the promise was disclosed earlier, it was in the context of a claim for temporary support in anticipation of marital dissolution, and the promissory estoppel claim involved elements of proof beyond those required in a divorce case.

[¶19] The court concluded that granting Wife's motion would likely require a continuance of the trial date, which would extend Husband's obligation to provide temporary support of $2,000 per month, and to pay monthly house, truck, and other payments, and that doing so would unduly prejudice him. The court also concluded that amendment would delay disposition of the case, and that it could take into account any premarital promises made by Husband when determining how to equitably divide the marital estate.

[¶20] Those conclusions are reasonable, and we can discern no abuse of discretion in the district court's ruling. In addition, we do not see how Wife could have been prejudiced by that ruling when the court—true to its word—heard and considered evidence relating to any premarital promises allegedly made by Husband at the divorce trial.

[¶21] It might be sufficient to conclude our discussion of this issue without further comment. However, there are two statutes which potentially bore on this issue, and we are reluctant to completely ignore the legislature's pronouncements, even though the parties did not raise them.

4

[¶22]  First of all, the premarital promises allegedly made and Wife's claim for relief raise the prospect that her claim of promissory estoppel was barred by Wyoming's "Heart Balm" Act, Wyo. Stat. Ann. § 1-23-101.  That statute provides as follows:

> The rights of action to recover money as damage for the alienation of affections, criminal conversation, seduction or breach of contract to marry are abolished.  No act done in this state shall give rise, either in or out of this state, to any of the rights of action abolished.  No contract to marry made in this state shall give rise, either in or out of this state, to any right of action for the breach thereof.

Wyo. Stat. Ann. § 1-23-101 (LexisNexis 2015).

[¶23]  Statutes such as this bar a variety of common law claims based upon promises to enter into romantic, familial relationships.  Their overriding purpose is to advance the precept that people should not be bound by certain agreements relating to those relationships, and to eliminate emotionally charged abuses often associated with suits for damages for breach of a promise to marry.  12 Am. Jur. 2d *Breach of Marriage Promise* § 12 (February 2016 update).  Those statutes are applied broadly to bar actions based on allegations of economic loss inextricably bound to promises to marry.  *Id.* § 14; *see also Boyd v. Boyd*, 39 Cal. Rptr. 400, 402-04 (Cal. Ct. App. 1964).  The California court held in *Boyd* that a promise to provide support is an implicit incident to every marital relationship, but that the California Heart Balm statute (which closely parallels the Wyoming statute) prohibits a suit for breach of that promise even when, as here, the promise to marry was fulfilled.  The court also held that the injured party nevertheless retains a wholly adequate alternative remedy by way of suit for divorce.  *Id.*

[¶24]  The district judge may therefore have been more prescient than the parties realized when he held, in substance, that the putative promises Husband made should be taken into account in an equitable division of marital property under Wyo. Stat. Ann. § 20-2-114 (LexisNexis 2015).  A court need not grant leave to amend if to do so would clearly be futile, as it would be if the statute barred the promissory estoppel claim.  6 Charles Alan Wright, et al., *Federal Practice and Procedure, Civil* § 1487 (3d ed., April 2015 update).

[¶25]  The same can be said for the prospect that Wife's claim may have been barred by the statute of frauds, Wyo. Stat. Ann. § 1-23-105(a)(iii) (LexisNexis 2015).  That statute renders void every "agreement, promise or undertaking made upon consideration of

5

marriage, except mutual promise to marry"[4] unless the agreement, or some note or memorandum of the agreement, is in writing and signed by the party against whom it is to be enforced.

[¶26] Because Wife's claim was based on a promise of support that allegedly extended beyond the dissolution of a promised marriage, one can scarcely avoid the conclusion that she was describing a sort of oral prenuptial agreement, which could have been unenforceable under the statute of frauds. No different result should come from the fact that Wife has marketed her contract claim as an equitable one of promissory estoppel.

[¶27] This Court has long recognized that certain equitable exceptions to the statute of frauds exist. However, our policy has been to restrict, rather than to expand the reach of those exceptions, even to the extent that hardships may result from that practice. *Davis v. Davis*, 855 P.2d 342, 346 (Wyo. 1993). Thus, we have held that a theory of promissory estoppel can be invoked to overcome the statute of frauds only when such is necessary to avoid a fraud that results in unconscionable injury. *Id.* at 349. That is, promissory estoppel cannot serve as an exception to the statute of frauds unless, at a minimum, the promissee both pleads and proves a fraudulent misrepresentation. *Kincheloe v. Milatzo*, 678 P.2d 855, 861-62 (Wyo. 1984).

[¶28] Although we acknowledge these legislative pronouncements as they relate to this appeal, we will address them no further. Neither party raised them, and we are without the benefit of briefing. Husband did not raise a statute of frauds defense to Wife's claim below, and accordingly, that issue would be deemed waived in any event. *See Bereman v. Bereman*, 645 P.2d 1155, 1159 (Wyo. 1982). That said, we affirm because the district court did not abuse its discretion in denying Wife's motion for leave to amend.

**Distribution of Property**

[¶29] The disposition of marital assets in a divorce is governed by Wyo. Stat. Ann. § 20-2-114, which requires a district court to distribute them in a just and equitable manner. The court should have "regard for the respective merits of the parties and the condition in which they will be left by the divorce, the party through whom the property was acquired and the burdens imposed upon the property for the benefit of either party and children." Wyo. Stat. Ann. § 20-2-114(a).

---

[4] The "mutual promise" exception refers to a situation in which parties exchange promises to marry and each promise is the exclusive consideration for the other. An agreement falls within the statute of frauds if marriage is only part of the consideration or inducement given by one party in exchange for the promise of the other party. Thus, the statute covers promises relating to the care and support of the other party after marriage. W.M. Moldoff, Annotation, *What constitutes promise made in or upon consideration of marriage within statute of frauds*, 75 A.L.R.2d 633, §§ 4[a], 6, 9 (1961 database updated weekly).

[¶30]   This Court reviews those decisions for an abuse of the district court's considerable discretion, and we will not find such an abuse unless the property division appears so unfair and inequitable that it would shock the conscience of reasonable minds. *Williams v. Williams*, 2016 WY 21, ¶ 34, ___ P.3d ___ (Wyo. 2016); *Guy-Thomas v. Thomas*, 2015 WY 35, ¶ 15, 344 P.3d 782, 786 (Wyo. 2015); *Kummerfeld v. Kummerfeld*, 2013 WY 112, ¶ 7, 309 P.3d 822, 824 (Wyo. 2013).   It is appropriate to identify the party through whom property was acquired and award it to that party regardless of whether that results in an equal division of marital assets.   As in all other regards, we afford the prevailing party every evidentiary inference favorable to the district court's decision, while omitting any consideration of the unsuccessful party's evidence.   *Williams*, ¶ 34, ___ P.3d at ___; *Guy-Thomas*, ¶¶ 15-16, 344 P.3d at 786-87; *Kummerfeld*, ¶¶ 9-10, 309 P.3d at 825.

[¶31]   The district court may also properly consider the short duration of a marriage as one measure of how the marriage affected any increase in the value of property brought to the marriage by one party.   *See Williams*, ¶ 39, ___ P.3d at ___ (five-year marriage). Furthermore, in evaluating the position in which the parties will be left after the divorce, it is necessary to consider not only to whom property will be awarded, but also who will be responsible for any debt relating to that property.   *Id.* at ¶ 40, ___ P.3d at ___; *see also Guy-Thomas*, ¶ 17, 344 P.3d at 787.

[¶32]   The record contains more than adequate support for the district court's finding that nearly all the property and income held during the marriage came from assets Husband acquired long before the parties' nuptials in Wyoming and his retirement nearly a year before.   From the time she moved into Husband's Florida condominium and continuing through trial, Wife had only negligible earnings, owned no property except for some household items, and lived almost entirely on Husband's resources.   She made next to no economic contributions to the marriage or to the value of marital assets during the three-year marriage.   Moreover, given the difference in the cost of living between Florida and Wyoming, and the effect of their respective housing markets on her prospects for a successful real estate practice, her economic position after divorce is certainly no worse than the one she faced before meeting Husband, particularly given the gifts of jewelry and the $45,000 "equalization payment" the court awarded her.

[¶33]   The district court's distribution of the couple's property to the party who brought it to the marriage, or whose premarital assets were used to purchase property acquired after they married, resulted in Husband receiving most of the marital property.   We have held that an equitable distribution of property is as likely as not to be unequal. *Walters v. Walters*, 2011 WY 41, ¶ 6, 249 P.3d 214, 221 (Wyo. 2011) (citing *Carlton v. Carlton*, 997 P.2d 1028, 1032 (Wyo. 2000)).   Beyond that, the decree also encumbered Husband with all the debt and obligations related to the property he received.   In light of these circumstances and the authority referred to above, we cannot say the court's property

division was so unfair, inequitable, or unreasonable as to shock the conscience. It therefore did not abuse its discretion.

## CONCLUSION

[¶34] The district court did not abuse its discretion in denying Wife's motion to amend her complaint, or in dividing the marital property as it did. Accordingly, the decree of divorce is affirmed in all respects.