# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

### 2025 ND 69

Sarah Shively,                                      **Plaintiff and Appellee**

v.

Kyle Shively,                                     **Defendant and Appellant**

### No. 20240284

Appeal from the District Court of Benson County, Northeast Judicial District, the Honorable Lonnie Olson, Judge.

REVERSED AND REMANDED.

Opinion of the Court by Tufte, Justice.

Kyle R. Craig, Minot, N.D., for plaintiff and appellee.

Micheal A. Mulloy (argued) and Christopher E. Rausch (on brief), Bismarck, N.D., for defendant and appellant.

**Shively v. Shively**
No. 20240284

**Tufte, Justice.**

[¶1]   Kyle Shively appeals from a district court judgment entered after a bench trial on divorce proceedings against Sarah Shively. On appeal, Kyle Shively argues the district court erred in awarding Sarah Shively primary residential responsibility and failing to award Kyle Shively summer parenting time. Kyle Shively also argues the district court erred by awarding his family farmstead to Sarah Shively. We conclude the district court failed to state its findings with sufficient specificity to enable a reviewing court to understand the factual basis for its decision. We reverse the judgment and remand for reconsideration and a reasoned explanation of the court's award of primary residential responsibility and parenting time, and its distribution of property.

I

[¶2]   The parties married in 2013 and separated in 2023. They have three school-age children born of the marriage. The marital home is in Pleasant Lake, North Dakota. The marital home was Kyle Shively's family farmstead. Sarah Shively currently resides in the marital home with the children. Kyle Shively moved to Rugby, North Dakota, during the separation.

[¶3]   Sarah Shively initiated divorce proceedings against Kyle Shively, seeking primary residential responsibility. Kyle Shively answered and filed a counterclaim, requesting primary residential responsibility, or, in the alternative, equal residential responsibility. At trial, Sarah Shively proposed a parenting plan awarding her primary residential responsibility, and Kyle Shively proposed a parenting plan awarding equal residential responsibility. After a two-day bench trial, the court entered its findings of fact, conclusions of law, and order for judgment, awarding Sarah Shively primary residential responsibility and the marital home in Pleasant Lake. Judgment was entered. Kyle Shively appeals.

1

## II

[¶4]   "The district court's award of primary residential responsibility is a finding of fact, which will not be reversed on appeal unless it is clearly erroneous or it is not sufficiently specific to show the factual basis for the decision." *Edison v. Edison*, 2023 ND 141, ¶ 9, 994 N.W.2d 151 (cleaned up). "This Court reviews the district court's decision on parenting time under the clearly erroneous standard." *Hillestad v. Small*, 2023 ND 195, ¶ 19, 5 N.W.3d 489 (citation omitted). "This Court reviews a district court's distribution of marital property as a finding of fact, and will not reverse unless the findings are clearly erroneous." *Walden v. Walden*, 2025 ND 32, ¶ 16 (citation omitted). "A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence supports it, or if this Court, on the entire record, is left with a definite and firm conviction a mistake has been made." *Armitage v. Armitage*, 2024 ND 97, ¶ 5, 6 N.W.3d 828 (citation omitted). The court must state its findings of fact with "sufficient specificity to enable a reviewing court to understand the factual basis for its decisions." *Dimmler v. Dimmler*, 2024 ND 20, ¶ 25, 2 N.W.3d 652 (cleaned up).

## III

[¶5]   Kyle Shively argues the district court clearly erred by awarding primary residential responsibility to Sarah Shively, because the award is contradicted by the court's assessment of the best interest factors. He does not argue the district court erred in its assessment of the best interest factors. Rather, he contends this Court should be left with a definite and firm conviction that a mistake has been made. Kyle Shively also argues the district court failed to explain why equal residential responsibility was not in the children's best interests.

[¶6]   "In deciding residential responsibility, the district court considers the best interests and welfare of the child." *Armitage*, 2024 ND 97, ¶ 6 (citing N.D.C.C. §§ 14-09-06.2, 14-09-30(1)). "That includes considering whether one parent will better promote the welfare and best interests of the child than the other. However, the analysis is not parent versus parent, or one proposed parenting plan against the other proposed parenting plan." *Id.* ¶ 14 (cleaned up). "Ultimately, the paramount consideration in residential responsibility

determinations is the best interests of the child." *Id.* (cleaned up). "Moreover, determining parental responsibility is not a mathematical formula by which the factors are added up and the person with the most factors in their favor is awarded residential responsibility." *Id.* ¶ 15 (cleaned up).

[¶7]  "The district court has substantial discretion in making a custody determination, but it must consider all of the best-interest factors." *Rustad v. Baumgartner*, 2018 ND 268, ¶ 4, 920 N.W.2d 465 (citation omitted). "Although a separate finding is not required for each statutory factor, the court's findings must contain sufficient specificity to show the factual basis for the custody decision." *Id.* "It is not enough for the district court merely to recite or summarize testimony presented at trial to satisfy the requirement that findings of fact be stated with sufficient specificity." *Id.*

[¶8]  Kyle Shively argues the district court found each factor to be either neutral, not in favor of either party, or inapplicable, but then erred in its ultimate determination: "The most obvious problem is the court's statement in its concluding analysis that factor (d) favored Sarah, when it specifically found in its best interest analysis that factor (d) favored neither party mere paragraphs earlier." He argues the findings are clearly erroneous because of this inconsistency. We agree.

[¶9]  The district court weighed the best interest factors. The court found factors a, b, c, d, e, f, and g weigh in favor of neither party. Factors h, i, j, k, and l were either neutral or inapplicable. The court did not consider any other factors under factor m. Then the court found:

> The court has considered all evidence at trial alongside the relevant best interest factors codified under NDCC 14-09-06.2 and ultimately finds that the best interest factors favor Sarah being awarded primary residential responsibility of the children. In particular, the court finds that NDCC 14-09-06.2(d) favors Sarah as she has provided the children with stability, consistency, and continuity their entire lives. Sarah remains in the same home that the minor children have resided in since birth and has met all of their needs.

3

Kyle's request for equal residential responsibility does not overcome these findings. The best interests of the minor children are what the court must consider, not the parties' wishes. The children's best interests are served by maintaining their status quo and awarding Sarah primary residential responsibility.

[¶10] The district court weighed factors d and e together, explaining "factor (e) uses a forward-looking approach to the stability of the family unit, its interrelations and environment, versus the backward-looking factor (d)." The court explained:

> Factor (d) requires consideration of the stability and quality of the child's past environment. Factor (d) addresses past stability of environment, including a consideration of place or physical setting, as well as a consideration of the prior family unit and its lifestyle as part of that setting. It also addresses the quality of that past environment, and the desirability of maintaining continuity . . . Although more than a physical structure or a geographic location should be analyzed under factors (d) and (e) (the permanence, as a family unit, of the existing or proposed custodial home), a district court's concerns about maintaining the custodial relationship that existed prior to the divorce and allowing the child to attend the same school and live in the same house are all valid considerations under factor d.
>
> *Burns v. Burns*, 2007 ND 134, ¶ 17, 737 N.W.2d 243 (internal quotations omitted). Notwithstanding, a parent residing with the children in the marital home does not assure that parent of being awarded primary residential responsibility. *See, e.g., Lindberg v. Lindberg*, 2009 ND 136, ¶¶ 13–14, 770 N.W.2d 252 (district court placing custody with mother did not err notwithstanding fact father was residing in marital home).

[¶11] Under factors d and e, the district court found:

> Here, since the children's births, they have resided in the Marital Home and upon the parties' separation, in the Rugby Home. The children will continue to reside in the Pleasant Lake/Rugby area

4

regardless of what parenting plan the court adopts. Similarly, the children will continue to attend the Rugby Public School regardless of what parenting plan the court adopts. Sarah argues to the court that, because the children have always resided in the Marital Home and she requests that she be awarded it, that she should be awarded primary residential responsibility because it is the only home that the children have known.

The transition of one party out of the Marital Home is expected due to the parties' relationship ending. Both parties' current residences are stable and safe for the children, and the court has no concerns that, if either party was to find alternate housing, that it would be of paramount importance to that parent that the children maintain stability in that household setting.

The court heard no concerning evidence that the parties will be unable to encourage and facilitate a positive relationship between the children and the other parent. . . .

The court found neither factor d nor factor e favored either party.

[¶12] The district court's findings are inconsistent or at the very least incomplete. The court noted Sarah Shively's argument that "because the children have always resided in the Marital Home and she requests that she be awarded it, that she should be awarded primary residential responsibility because it is the only home that the children have known." The court did not expressly reject nor adopt Sarah Shively's argument. In its conclusion on the best interest factors, the court said factor d "favors Sarah" because she "provided the children with stability, consistency, and continuity their entire lives" and "Sarah remains in the same home that the minor children have resided in since birth and has met all of their needs." However, under the court's analysis of factor d, the court found it favored neither party and both parties' homes provide safety and stability.

[¶13] In addition to the inconsistent findings on factor d, it appears the court tied its decision on residential responsibility to its decision awarding the marital home. We have consistently held "a parent residing with the children in the marital home does not assure that parent of being awarded primary residential responsibility." *Marsden v. Koop*, 2010 ND 196, ¶ 22, 789 N.W.2d 531. The district court's only explanation of its award to Sarah Shively is not supported by its own

5

findings. The district court did not explain its award of primary residential responsibility to Sarah Shively in light of finding all of the best interest factors as either neutral or favoring neither party.

[¶14] We are also not able to ascertain why the court awarded primary residential responsibility to Sarah Shively without considering equal residential responsibility. In cases like this, where a party has requested equal parental responsibility, and particularly where the court finds "the parties are able to effectively communicate with each other," the court must consider equal residential responsibility. *See, e.g., Hillestad,* 2023 ND 195, ¶ 9 ("Whether or not joint custody is in the best interests of a child depends on the facts and circumstances of the particular case. We have never held there is a presumption against joint custody."); *see also P.A. v. A.H.O.,* 2008 ND 194, ¶ 17, 757 N.W.2d 58 (explaining "to affirm a trial court's award of joint custody, it is necessary for the trial court to find that joint custody is in the child's best interests"). The court must consider whether equal residential responsibility is in the children's best interests and articulate its reasoning sufficiently for appellate review.

[¶15] We are unable to understand the factual basis for the district court's award of primary residential responsibility to Sarah Shively. We therefore remand for reconsideration and a reasoned explanation of the district court's decision.

IV

[¶16] Kyle Shively argues the district court erred in its parenting time award because the court did not award Kyle Shively summer parenting time. Sarah Shively argues the district court awarded Kyle Shively seven days of extended parenting time at his election.

[¶17] The district court awarded both parties seven days of vacation parenting time, which differs from extended summer parenting time. The judgment does not address summer parenting time. Sarah Shively's post-trial brief asked the district court to adopt her proposed parenting plan, "with the minor correction that Sarah would agree to Kyle having increased summer parenting time." Despite this apparent agreement regarding extended summer parenting time, the district court failed to explain its omission.

[¶18] "In awarding parenting time to the non-custodial parent, the best interests of the child, rather than the wishes or desires of the parents, are paramount." *Hillestad*, 2023 ND 195, ¶ 19 (citation omitted). "We have stated visitation between a non-custodial parent and a child is presumed to be in the child's best interests and that it is not merely a privilege of the non-custodial parent, but a right of the child." *Deyle v. Deyle*, 2012 ND 248, ¶ 17, 825 N.W.2d 245 (citations omitted). "Absent a reason for denying it, some form of extended summer visitation with a fit non-custodial parent is routinely awarded if a child is old enough." *Id.* ¶ 19 (cleaned up); *see also Kershaw v. Finnson*, 2022 ND 165, ¶ 25, 980 N.W.2d 40 (concluding the award was not clearly erroneous because "the district court granted Finnson one additional week of parenting time during each summer month over Kershaw's objection").

[¶19] The district court cites *Deyle*, acknowledging this Court has remanded for reconsideration when a trial court denied extended summer visitation without explaining its reasoning. 2012 ND 248, ¶ 19. Despite this acknowledgment, the court neither awarded extended summer visitation nor provided any explanation for this omission. The district court's failure to explain the absence of extended summer parenting time was error, requiring remand for reconsideration and a reasoned explanation of the court's decision.

V

[¶20] Kyle Shively argues the district court clearly erred by awarding the marital home to Sarah Shively. He argues the district court awarded Sarah Shively his family farmstead without considering the *Ruff-Fischer* guidelines and the sentimental value, which resulted in an inequitable distribution of the estate.

[¶21] "All property held by either party, whether held jointly or individually, is considered marital property, and the court must determine the total value of the marital property before making an equitable distribution." *Langwald v. Langwald*, 2016 ND 81, ¶ 10, 878 N.W.2d 71 (quotation omitted). "Our law does not require a set formula or method for dividing marital property; rather, the division is based on the particular circumstances of each case. A property division need not be equal to be equitable, but a substantial disparity must be explained." *Id.* ¶ 11

7

(internal citations and quotations omitted). "Separate property, even if it is inherited, must initially be included in the marital estate, but the property's origin may be considered when equitably dividing the estate." *Fugere v. Fugere*, 2015 ND 174, ¶ 8, 865 N.W.2d 407 (citing *Feist v. Feist*, 2015 ND 98, ¶ 6, 862 N.W.2d 817).

[¶22] "After a fair evaluation of the property is made, the entire marital estate must then be equitably divided between the parties under the *Ruff-Fischer* guidelines." *Lee v. Lee*, 2019 ND 142, ¶ 12, 927 N.W.2d 104 (citation omitted). The *Ruff-Fischer* guidelines consider the following factors in determining how to equitably divide the marital estate:

> the respective ages of the parties, their earning ability, the duration of the marriage and conduct of the parties during the marriage, their station in life, the circumstances and necessities of each, their health and physical condition, their financial circumstances as shown by the property owned at the time, its value at the time, its income-producing capacity, if any, whether accumulated before or after the marriage, and such other matters as may be material. The trial court is not required to make specific findings, but it must specify a rationale for its determination.

*Id.* (citations omitted). "The district court is also required to consider the source of the property in determining an equitable allocation of the parties' marital property." *Id.* "While the origin of property must be considered, there is no requirement to set property aside for a spouse who brings property into a marriage." *Id.*

[¶23] Kyle Shively, citing other states as authority, argues the *Ruff-Fischer* factors fail to specifically consider "the emotional and sentimental attachments that a party has to property" but argues it is inherently built into the spirit of the *Ruff-Fischer* factors. *See, e.g., Sanning v. Sanning*, 2010 WY 78, ¶ 12, 233 P.3d 922, 924 (Wyo. 2010) (explaining a factor that requires the court consider who acquired the property, "may by definition, incorporate the concept of sentimental value"); *Bumpous v. Bumpous*, 770 So. 2d 558, 560 (Miss. Ct. App. 2000) (explaining "the chancellor must consider, among other things, 'the emotional value' of any asset being distributed in an equitable distribution at the dissolution of a marriage").

He further argues that the sentimental value of the home should be considered under the *Ruff-Fischer* factor catch-all provision, "such other matters as may be material."

[¶24] Kyle Shively also cites this Court's directive that origin of the property must be considered by the trial court. In *Gaulrapp v. Gaulrapp*, 510 N.W.2d 620, 621 (N.D. 1994) this Court explained: "The origin of the property owned by the parties can be considered by the trial court under the guidelines, and we have acknowledged that inherited property should be set aside to the heir where fairly possible." 510 N.W.2d 620, 621 (N.D. 1994) (cleaned up). Following *Gaulrapp*, this Court clarified: "We have never held that property brought into a marriage or acquired by gift or inheritance by one spouse, be irrevocably set aside to that spouse." *Hogan v. Hogan*, 2003 ND 105, ¶ 21, 665 N.W.2d 672 (citation omitted).

[¶25] Kyle Shively argues the district court had other equitable distribution options but failed to consider the source of the property and its sentimental value upon distribution. He proposed multiple distribution alternatives to award him his family's farmstead and allow an equitable distribution of the other assets. Kyle Shively proposed:

> As to the Marital Home, Sarah shall have six (6) months or another time mutually agreed to by the parties to vacate the Marital Home. Kyle shall sell the Rugby Home in a commercially reasonable manner and the net proceeds from the sale of the Rugby Home shall be awarded to Sarah. The parties report that the Rugby Home has equity in the approximate amount of $28,000. With Sarah being awarded the net proceeds, the division of the marital estate is near equal.

[¶26] The district court's factual findings explain:

> The Marital Home has a long history in the Shively family and has sentimental value. Kyle's parents, Scott and Carol Shively, purchased the ten (10) acres and built a home on the property. Kyle, his parents, and his three (3) siblings resided at the property and throughout the years ran a cattle ranch. In May 2003, Kyle's mother passed away in a car accident. Scott, Kyle's father, testified that Kyle requested that Carol's remains be buried at the Pleasant Lake

9

property as Carol had previously conveyed this desire to Kyle. Since Carol's passing, Kyle's siblings have visited their mother's burial site despite the property being occupied and later owned by Sarah and Kyle.

[¶27] The district court summarized the parties' arguments regarding the marital home:

> Kyle requests that he be awarded the Marital Home. Awarding the Marital Home to Kyle would require Sarah to find alternate housing. Kyle's proposes that Sarah would receive an income-producing parcel of land that is unencumbered and will have no debt other than her daily living expenses. Sarah proposes that she be awarded the Marital Home and that Kyle be awarded the Rugby Home, the agricultural property, and the debt that is associated with the agricultural property. In addition, Sarah requests a cash equity payment in the amount of $150,000 payable at a rate of $15,000 per year for 10 years.

The court further found:

> Sarah acknowledged at trial that Kyle came into the marriage with substantially more assets than she. The court further finds that the parties' marital estate increased in value based upon property that Kyle inherited prior to the parties' marriage and options that he obtained through family members to purchase real property at a substantially reduced rate. Specifically . . . "the Marital Home[] was previously owned by Kyle's parents. While Kyle was living in the Marital Home prior to marriage, the parties purchased the property . . . . The parties purchased this property, which includes ten acres, for $70,000. Scott testified that he believed the fair market value of the property at the time of the sale was likely $140,000.

The court quoted *Young v. Young*, 1998 ND 83, ¶ 10, 578 N.W.2d 111, which explains: "We have never held that property brought into a marriage or acquired by gift or inheritance by one spouse, be irrevocably set aside to that spouse." The court then awarded the marital home to Sarah Shively under a general list of assets without explanation of its award.

10

[¶28] The district court failed to state its findings with sufficient specificity to enable a reviewing court to understand the factual basis for its decision. The court noted the parties' arguments and the testimony regarding the sentimental value of the home, but the court ultimately awarded the home to Sarah Shively without explanation. We cannot conclude "[t]he court unequivocally considered the source of the property as well as the *Ruff-Fischer* guidelines in coming to its distribution decision," *Lee*, 2019 ND 142, ¶ 13, because the court failed to address the arguments or facts underlying its award of the marital home to Sarah Shively. *See also Brew v. Brew*, 2017 ND 242, ¶ 21, 903 N.W.2d 72 (affirming because the "district court adequately explained its property distribution"). Furthermore, while the marital home need not "be irrevocably set aside" to the heir, we have also explained that "inherited property should be set aside to the heir where fairly possible." *Olson v. Olson*, 445 N.W.2d 1, 4 (N.D. 1989). The district court did not find an award of the marital home to Kyle Shively was not "fairly possible." The court did not address Kyle Shively's proposed alternative distribution of the assets. We therefore remand for reconsideration and a reasoned explanation of the district court's decision.

VI

[¶29] We have considered the parties' remaining arguments and conclude they are either without merit or unnecessary to our decision. We reverse and remand the district court's judgment for reconsideration and a reasoned explanation of the court's award of primary residential responsibility and parenting time, and its distribution of property.

[¶30] Jon J. Jensen, C.J.
     Daniel J. Crothers
     Lisa Fair McEvers
     Jerod E. Tufte
     Douglas A. Bahr